KING *v.* NELLER.

1. STREET RAILWAYS—NEGLIGENCE — CONTRIBUTORY NEGLIGENCE —
DIRECTED VERDICT.

> In an action against the owner of a taxicab and a street
> railway company for personal injuries received by plain-
> tiff, a passenger in the taxicab, when the latter was
> struck by the street car at a street crossing, where there
> was testimony that the street car had no headlight, and
> was so dimly lighted that, although witnesses looked be-
> fore attempting to cross the track, it was not visible until
> within a few feet of them, the trial court properly re-
> fused to hold that the driver of the taxicab was guilty
> of negligence as a matter of law.

2. SAME—NEW TRIAL—GREAT WEIGHT OF EVIDENCE.

> Evidence *held*, to justify the trial judge in refusing to
> direct a verdict for defendant railway company and in
> holding that the verdict against it is not contrary to the
> great weight of the evidence.

3. SAME—TRIAL—INSTRUCTIONS—DEGREE OF CARE REQUIRED.

> Where the trial judge plainly instructed the jury that it
> was the duty of the driver of the taxicab to exercise a
> high degree of care for the safety of his passengers for
> hire, an inadvertent statement later that "if he failed to
> exercise the measure or the degree of care that a reason-
> ably prudent man would have exercised under the same
> or like circumstances, then he was guilty of negligence,"
> *held*, not open to the objection that the jury were in-
> structed that it was the driver's duty to exercise only
> reasonable care, and therefore was not reversible error.

4. SAME—INSTRUCTIONS AS TO FUTURE PAIN—"IN ALL PROBABILITY"
EQUIVALENT TO "REASONABLE CERTAINTY."

> The use of the words "in all probability," by the trial
> judge, in instructing the jury that, "If you believe from
> the evidence in the case that in all probability she (plain-
> tiff) will in the future suffer pain, you may award her the
> present worth of such amount as will fairly and justly
> compensate her for this future pain and suffering," *held*,

On duty of operator of automobile when near street car, see
note in 38 L. R. A. (N. S.) 493.
   On excessiveness of verdicts in actions for personal injuries
other than death, see note in L. R. A. 1915F, 30.

equivalent to "reasonable certainty," and therefore not objectionable.

5. SAME—REQUESTS TO CHARGE.

Requests to charge *held*, sufficiently covered by the general charge.

6. SAME—PLEADING—EVIDENCE—ADMISSIBILITY—VARIANCE.

Testimony by the nurse, plaintiff, and a doctor as to the swollen condition of plaintiff's abdominal walls, uterus, and bladder, and also as to bloody discharges from the sexual organs, etc., *held*, admissible under the declaration.

7. DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.

Where plaintiff was in perfect health before the accident, a verdict for $6,275 cannot be said to be excessive for injuries including a fractured pelvis, fractured lumbar vertebra, shock and internal injuries which caused her great pain and suffering, in the absence of any showing of passion or prejudice or that the verdict was not based on the evidence.

Error to Ingham; Carr (Leland W.), J. Submitted May 2, 1924. (Docket No. 42.) Decided July 24, 1924. Rehearing denied October 6, 1924.

Case by Christina King against Bert Neller and the Michigan United Railways Company for personal injuries. Judgment for plaintiff against defendant railway. Plaintiff and defendant railway bring error. Affirmed.

*C. W. & W. S. Foster* (*A. M. Cummins*, of counsel), for plaintiff.

*Justin R. Whiting* (*Benjamin Kleinstiver*, of counsel), for defendant railway.

*Jason E. Nichols*, for defendant Neller.

CLARK, C. J.  Near East Lansing, Campus drive leads southeasterly from Michigan avenue to the

campus of the Michigan Agricultural College. Street car tracks of defendant railway company lie immediately south of Michigan avenue, roughly parallel with it at that point, and a few feet south of the intersection of Campus drive with the paved portion of Michigan avenue. Plaintiff and others were passengers for hire in an automobile, a seven-passenger Buick, of defendant Neller, driven by his employee, Pringle, from the city of Lansing east to the city of East Lansing, on Michigan avenue, about 11:30 p. m., March 18, 1922. The automobile had a winter top, with glass windows. The left front glass was out. The night was dark. There had been rain or sleet though none was falling at the moment in question. Driving on Michigan avenue at the rate of 20 to 25 miles per hour, and desiring to turn into Campus drive and to cross the car tracks, Pringle reduced the speed, when about 30 or 40 feet from the turn, and was crossing the tracks at about 8 miles per hour, when a west-bound city type street car struck the automobile just forward of the left hind wheel. Plaintiff was thrown and severely injured. The negligence claimed against defendant railway was excessive speed, failure to keep proper outlook, to give warning of approach, and to make proper display of lights.

Of her suing both defendants, plaintiff's counsel say:

"They are not charged as wrongdoers joining in the same wrongful acts, but as separate and individual wrongdoers, each of whose wrongful acts contributed to the result."

Motions of both defendants for directed verdict were denied. The verdict was $6,275 against defendant railway company and no cause of action as to defendant Neller. The motion of defendant railway for a new trial, on the ground that the verdict against it is contrary to the great weight of the evidence and is excessive, was denied. The motion of plaintiff for

a new trial as to defendant Neller alone, on the ground that the verdict in his favor is against the great weight of the evidence, was also denied.    Judgment was entered on the verdict.    Both plaintiff and defendant railway bring error.

1. Plaintiff has assigned error on the denial of her motion for a new trial; and it is also urged that defendant Neller was negligent as a matter of law.    The driver, Pringle, is said to have been negligent in not taking proper precaution for the safety of his passengers before attempting to cross the tracks.    He testified that when about 30 or 40 feet from the turn into Campus drive he looked west, then—

"I looked again up (east) the street.    I had been looking up the street all the time.    I saw nothing on that track.    *   *   *

"Q. That was the last time that you looked to the east?

"A. Yes, sir.

"Q. Before you slowed down from about 30 feet back from the point you turned in?

"A. No, I was looking up that track all of the time.

"Q. You say you kept looking up the track all the time?

"A. After that.

"Q. And saw nothing?

"A. Saw nothing."

Miss Force, a passenger in the automobile, looked just before the turn into Campus drive.    She testified: "I had satisfied myself that the track was clear.    *   *   *  I saw nothing at all."    Plaintiff's husband, also a passenger in the automobile, testified that he was looking up the track (east) all the time and saw no car until the front wheels of the automobile were on the track.    The driver and other occupants of the automobile, although attentive as they claim, failed to see or hear the approaching car until it was almost upon them.    At this instant the street car

was distant from 30 feet or less to about 75 feet, according to the varying testimony of witnesses.

Defendant railway says:

"The undisputed physical facts demonstrate that the view of approaching car was unobstructed to the east of the crossing for three blocks, and had the automobile driver looked with the slightest degree of care, he could not have failed to see the approaching car; he either failed to look or looked so indifferently as not to see a car in plain sight. He must be held to have seen the car had he used the degree of care the law required;" citing *Molby* v. *Railway*, 221 Mich. 419, and other like cases.

This rule does not dispose of the case at bar. While there is testimony of the motorman and of the conductor, well corroborated by a disinterested witness, that the headlight, designation light, and lights within the car were all burning and plainly visible, there is considerable testimony that the car lacked proper lighting. Pringle, the driver, testified that there was no headlight on the car. Plaintiff's husband testified:

"*A.* Well, the front wheels of our taxi, I think were right on the car line. I heard a rumble, I thought it was from the car coming from Lansing and then all at once I saw a faint light right there to the east.

"*Q.* You saw the light?

"*A.* Yes, to the east.

"*Q.* Do you mean by that, coming down the track?

"*A.* Yes.

"*Q.* A street car?

"*A.* I am sure I heard the rumble first and I was confused, I could not imagine where it was coming from, then I saw the faint light up there a little distance.

"*Q.* What did that light turn out to be?

"*A.* It was the light shining out through the motorman's window. * * *

"*Q.* Was the light on the inside of the street car or on the outside of the street car?

"*A.* It must have been on the inside if it could come

through the motorman's window.    I saw no head-
light.

"*Q.* That was what I was getting at, as you looked
towards the street car coming from the east, did you
see any headlight?

"*A.* I saw no headlight."

A witness was a passenger on an east-bound car,
standing on a side track about 125 feet west of the
place of the accident and waiting for the west-bound
car in question.    Standing in the front vestibule, he
looked east for an approaching car, saw none, and, in-
tending not to wait but to walk into East Lansing,
started to step off the car and then heard the crash.
The night was dark, the atmosphere heavy, the
avenue lighted.    To the south there was a background
of trees.    The grade of the tracks was 3 to 6 feet
higher than the pavement.    The automobile was using
headlights and a spot light.    The street car was
coming down grade, with power off, on its last trip for
the night.    It does not appear that it carried any
passengers.    It was being followed by a special car.
Several witnesses testified that the speed of the car
as it approached the crossing was 7 to 15 miles, 12
miles, or 15 miles per hour.    Plaintiff's husband, from
observations made from within the automobile and
upon a comparison of the distance covered by the
automobile at an estimated speed within an estimated
time with the claimed greater distance covered by the
car in the same time, testified that the speed of the
car was between 25 and 30 miles an hour.    His testi-
mony in this regard has little probative force, but it
finds some support in the testimony of other witnesses
of the suddenness with which the car came upon them.
Plaintiff testified: "Well, from the—judging from the
noise, it seemed faint and it came out loud at once
almost," and, "I did not become aware that a street
car was bearing down upon us until the actual minute
of the collision; I simply heard the roar and that was

all there was to it." The automobile was carried or thrown about 21 feet by the force of the collision. The motorman testified that when he saw the automobile about to cross he sounded the gong, applied brakes, reversed and stopped in about 3 car lengths and just beyond the crossing.

The trial judge said in an opinion denying plaintiff's motion for a new trial:

"In the final analysis the contention that Pringle was, as a matter of law, guilty of negligence, rests on the assumption that if he had looked as claimed by him, and as testified to by other occupants of the car, he must have seen the street car approaching. It cannot be said with any reasonable degree of certainty that such was the fact. * * * Bearing in mind the atmospheric conditions, the position of the street lights, the background of the street car, the fact that the latter vehicle was coming down grade, and considering also the testimony as to the absence of lights thereon, I am brought to the conclusion that it cannot be said that as a matter of law Pringle was guilty of negligence; nor, by the same process of reasoning can it be said that the verdict of the jury was contrary to the clear weight of the evidence."

With his conclusion we agree, and it follows that the judge did not err in refusing to direct a verdict for defendant railway and in holding that the verdict against it is not contrary to the great weight of the evidence.

2. We quote from the charge:

"It was the duty of Mr. Pringle in the operation of this automobile to exercise a high degree of care for the safety of the passengers for hire who were in this vehicle. It was his duty on approaching this crossing to take all reasonable and possible precaution in order that they might not suffer harm. If he failed in that duty or if he failed to exercise the measure or the degree of care that a reasonably prudent man would have exercised under the same or like circumstances, then he was guilty of negligence."

Counsel concede that the first two sentences of the instruction correctly state the duty, but insist that the last sentence is erroneous in its disjunctive reference to reasonable care.    If the driver failed to exercise a high degree of care for the safety of his passengers, he was negligent.    That covers and includes the proposition that a failure as to any lower degree of care was negligence.    The judge did not state that the driver's duty was to exercise but reasonable care. The plain instruction was for a high degree of care. We think the jury was not misled by the inadvertent language, and that it does not require reversal.

3. We quote from the charge:

"If you believe from the evidence in the case that in all probability she will in the future suffer pain, you may award her the present worth of such amount as will fairly and justly compensate her for this future pain and suffering," etc.

The words "in all probability" are criticized, and it is said that only such future damages can be recovered as the evidence makes reasonably certain will necessarily result from the injury sustained, that there must be reasonable certainty of future consequences of the injury as distinguished from reasonable probability; citing *Matthews* v. *Lamberton*, 184 Mich. 493; *Brininstool* v. *Railways Co.*, 157 Mich. 172; *Kethledge* v. *City of Petoskey*, 179 Mich. 301.    "In all probability" means more than reasonable probability.    It is equivalent to reasonable certainty.    It describes the highest degree of probability.    It has practically the same meaning as "in all likelihood," which has been held equivalent to reasonable certainty.    *Ballard* v. *Kansas City*, 110 Mo. App. 391 (86 S. W. 479); 31 C. J. p. 363; 2 Words and Phrases (2d Series), 984.    The charge, though general in character, sufficiently covered the substance of requests to charge and presents no error requiring reversal.

4. The declaration states:

"The plaintiff was severely bruised and injured, one vertebra was fractured, her pelvic bone was broken in, to-wit, four places and she was so bruised and injured that for a long period of time she was unable to walk, she suffered a great nervous shock, still suffers from such shock and injuries and will permanently continue so to do, all of which caused and will cause her loss of sleep, loss of vitality, great pain and suffering," etc.

The following testimony was received over the objection that it was not covered by the declaration. The nurse testified:

"When I went there to take care of her, I found that she was very lame and sore on her side and all along in the limb were indentures—I suppose, from the breaking away of the ligaments; and every half hour or hour I would try to massage her and then, of course, all across the abdominal walls were very much swollen and also the uterus and bladder.

"*Q.* Was there any discharge or hemorrhage of any kind?

"*A.* Yes.  It was a bloody discharge and very much so, very profuse."

Plaintiff testified:

"I was in pain and these pains all through here, always aching, and my spine was constantly sore and the internal injury caused me a lot of trouble.

"*Q.* What were the evidences of the internal trouble, in what way did they manifest themselves?

"*A.* You mean the pain.   Burning pain and bloody mattery discharge."

A doctor testified of a vaginal discharge, and of swelling and inflammation of sexual organs.   Plaintiff had been in perfect health before the injury.   The disorders complained of immediately followed it. There was a fractured pelvis, fractured lumbar vertebra, shock, internal injuries.   That the testimony was admissible under the declaration is settled by

the following cases: *Montgomery* v. *Railway Co.,* 103 Mich. 46 (29 L. R. A. 287); *Johnson* v. *McKee,* 27 Mich. 471; *Gallagher* v. *Monroe,* 222 Mich. 202. And see *Grogitzki* v. *Ambulance Co.,* 186 Mich. 374, and cases there cited.

5. The verdict is said to be excessive. Plaintiff, a married woman, claimed right to recover only for her personal injury and suffering. 30 C. J. p. 962; *Berger* v. *Jacobs,* 21 Mich. 215. She made no claim here for loss of earnings, diminished earning capacity, hospital, medical or nursing expense. She was severely injured, as stated, and suffered great pain. Treatment to reduce the fractures was painful and accompanied by anæsthetics and hypodermics. At the time of the trial, February, 1923, she was well on the way toward what the doctors thought would be a complete recovery. But she still suffered pain, and it appears will continue to do so for some time. We find no appeals to passion or prejudice, nothing to indicate that the verdict is based on anything but the evidence. The verdict itself is not so large as to raise an inference of prejudice. Under these circumstances, we must decline to hold it excessive. *Fishleigh* v. *Railway,* 205 Mich. 145. We find no reversible error.

Judgment affirmed. Plaintiff will have costs against defendant Railway Company. Defendant Neller will have costs against plaintiff.

MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred. WIEST, J., took no part in this decision.