LARSON v JOHNS-MANVILLE SALES CORPORATION
REVARD v JOHNS-MANVILLE SALES CORPORATION
BRIMMER v JOHNS-MANVILLE SALES CORPORATION
GLAZIER v FIBREBOARD CORPORATION

Docket Nos. 75933-75936. Argued April 9, 1986 (Calendar No. 5).
Decided December 29, 1986. Rehearing denied 428 Mich 1207.

Representatives of the estates of four deceased insulation workers brought separate wrongful death actions in the Wayne Circuit Court, alleging that the deaths had resulted from exposure to asbestos products. Elizabeth A. Larson, as personal representative of the estate of Lawrence E. Larson, and Terry L. Brimmer, as executor of the estate of Lawrence Brimmer, brought actions against the Johns-Manville Sales Corporation and others, alleging that the deaths of their decedents were caused solely as a consequence of asbestosis. Lucille E. Revard, as administratrix of the estate of Leeman G. Revard, brought an action against the Johns-Manville Corporation and others, and Hazel E. Glazier, as executrix of the estate of George Glazier, brought an action against the Fibreboard Corporation and others, each alleging that the deaths of their decedents were the result of cancer caused by exposure to asbestos. The cases were consolidated in the circuit court, and the court, John D. O'Hair, J., granted summary judgment for the defendants on the ground that the actions were barred by the statute of limitations. The court held that in order to maintain an action under the wrongful death act, a decedent must have been able to have maintained an action but for the intervening death, and that because in all the cases personal injury suits would have been barred before the date on which the wrongful death actions were filed, the wrongful death actions likewise were

REFERENCES

Am Jur 2d, Products Liability §§ 909 et seq., 918 et seq.

Time of discovery as affecting running of statute of limitations in wrongful death action. 49 ALR4th 972.

Products liability: inhalation of asbestos. 39 ALR4th 399.

When statute of limitations begins to run as cause of action for development of latent industrial or occupational disease. 1 ALR4th 117.

barred. The court also determined that the causes of action for cancer accrued at the same time as the causes of action for asbestosis. The Court of Appeals, BEASLEY, P.J., and GRIBBS, J. (ERNST, J., concurring in part and dissenting in part), affirmed, holding that the limitation period in wrongful death actions is governed by the statutory provision applicable to the theory of liability of the underlying wrongful act, and that the claims based on cancer as the cause of death like the claims based on asbestosis were barred (Docket Nos. 64286, 64287, 64649, 67510). The plaintiffs appeal.

In an opinion by Chief Justice WILLIAMS, joined by Justices BRICKLEY, CAVANAGH, BOYLE, RILEY, and ARCHER, the Supreme Court *held:*

A cause of action for asbestosis accrues at the time a person knows or should have known of the disease, and not at the time of exposure to asbestos or at the time of diagnosable injury. Persons who develop asbestosis may bring an action within three years of the time they discover or should have discovered their disease. Persons who develop cancer which may be related to asbestos exposure, and who have not brought an earlier action for asbestosis, may bring an action to recover damages for cancer within three years of the date they discover or should have discovered the cancer.

1. Products liability actions must be brought within three years after a claim accrues. Accrual of wrongful death actions is governed by the statute of limitations applicable to the underlying claim. The primary purposes of statutes of limitations are to encourage plaintiffs to pursue claims diligently and to protect defendants from having to defend against stale or fraudulent claims.

2. In an asbestos-related products liability action, the wrong which triggers accrual is not the breach of a duty, but the injury which results from the breach. A claim cannot be barred by the applicable statute of limitations before a claimant knew or should have known of an injury. Discovery of an injury is the earliest possible date of accrual of a cause of action. Thus, wrongful death claims premised on asbestosis accrue at the time the decedent knew or should have known of the asbestosis. In these cases, more than three years had elapsed between the date of accrual and the date of filing; therefore, the claims based on asbestosis were untimely.

3. The discovery of asbestosis does not trigger the running of the statute of limitations for cancers which arise independently of the asbestosis, but may be caused by the same exposure to asbestos. Asbestosis victims who do not wish to bring suit for

their asbestosis should not be forced to sue for the possibility of contracting cancer. Rather, the victim should be allowed to wait until cancer is discoverable, so as to obtain full recovery. Thus, persons who develop cancer which may be related to exposure to asbestos, and who have not previously brought an action premised on contracting asbestosis, may bring an action to recover damages for cancer within three years of the date they discover or should have discovered the cancer.

*Larson* and *Brimmer,* affirmed.

*Glazier* and *Revard,* affirmed in part and reversed in part.

Justice LEVIN, writing separately, stated that, generally, a cause of action for wrongful death does not accrue until the date of death. The statement in the lead opinion in *Hawkins v Regional Medical Laboratories, PC,* 415 Mich 420 (1982), that actions brought pursuant to the wrongful death act accrue as provided by the statutory provisions governing the underlying liability theory and not at the date of death is obiter dictum. The question presented in that case related to the accrual provisions of the medical malpractice statute of limitations. The constructional and policy issues involved in the construction of that statute do not necessarily pertain to claims governed by the general statutes of limitations. The question purportedly decided in *Hawkins* deserves plenary consideration in this case, not involving the medical malpractice statute of limitations, where resolution of the question is necessary to decision.

140 Mich App 254; 365 NW2d 194 (1984) affirmed in part and reversed in part.

1. LIMITATION OF ACTIONS — PRODUCTS LIABILITY — ASBESTOSIS.

A cause of action for asbestosis accrues at the time a person knows or should have known of the injury, and not at the time of exposure to asbestos or at the time of diagnosable injury; persons who develop asbestosis must bring an action within three years of the time they discover or should have discovered the disease (MCL 600.5805, 600.5827; MSA 27A.5805, 27A.5827).

2. LIMITATION OF ACTIONS — PRODUCTS LIABILITY — ASBESTOSIS — CANCERS.

Persons who develop cancer which may be related to asbestos exposure, and who have not brought an earlier action for asbestosis, must bring an action to recover damages for cancer within three years of the date they discover or should have discovered the cancer (MCL 600.5805, 600.5827; MSA 27A.5805, 27A.5827).

3. LIMITATION OF ACTIONS — WRONGFUL DEATH — ASBESTOSIS.

Accrual of wrongful death actions is governed by the statute of limitations applicable to the underlying claim; thus, wrongful death actions premised on asbestosis accrue when the decedents knew or should have known of the asbestosis (MCL 600.2922, 600.5805, 600.5827; MSA 27A.2922, 27A.5805, 27A.5827).

*Theodore Goldberg* and *Arthur L. Petersen* for the plaintiffs.

*Collins, Einhorn & Farrell, P.C.* (by *Clayton F. Farrell* and *Noreen L. Slank*), for defendant Celotex Corporation, et al.

Amici Curiae in support of plaintiffs:

*Baron & Budd* (by *Russell W. Budd*).

*Bockoff & Zamler, P.C.* (by *Daryl Royal* and *Patrick J. Bruetsch*).

*Law Offices of Michael B. Serling, P.C.* (by *Michelle E. Areeda* and *Michael B. Serling*).

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen, & Bartnick* (by *Sheldon L. Miller*).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Barry P. Waldman*), for Michigan Trial Lawyers Association.

WILLIAMS, C.J. The issues in this case are: 1) when does a cause of action for asbestosis accrue in Michigan, and 2) does a failure to bring a suit for asbestosis within the statutory period bar an action for cancer which subsequently develops as a result of the same exposure to asbestos. We hold: 1) the cause of action for asbestosis accrues in accordance with the "discovery rule," i.e., from the time the claimant knows or should have known of the disease, rather than at the time of exposure to

asbestos or at the time of diagnosable injury; and 2) if a claimant chose not to bring an action for asbestosis, a later action to recover for cancer accrues at the time the claimant knows or should have known of the cancer.[1]

### I. FACTS

The four cases before us which were consolidated for appeal are all wrongful death actions brought by the personal representatives of the estates. All are asbestos-related products liability cases in which defendants were granted summary judgment on the basis of the statute of limitations.

Decedents were all insulation workers who were exposed to asbestos and who subsequently developed asbestosis. None of the workers had filed a personal injury action before his death, although each was aware of his disease for many years. Two of these men, Glazier and Revard, also developed cancers which may be related to the asbestos exposure. The chart in figure 1 below summarizes the relevant data.

Figure 1.

| Name | Knew or Should Have Known of Asbestosis No Later Than. . . . | Suit-Time Barred | Knew or Should Have Known of Cancer | Date of Death | Date of Filing |
|---|---|---|---|---|---|
| Larson | 9/7/72 | 9/7/75 | no cancer | 8/26/77 | 1/10/80 |
| Brimmer | 7/26/67 | 7/26/70 | no cancer | 4/14/78 | 1/10/80 |
| Revard | 2/10/71 | 2/10/74 | 1/77 | 7/6/77 | 10/31/79 |
| Glazier | 3/28/73 | 3/28/76 | Approx. 10/20/77 | 11/1/77 | 10/31/79 |

[1] We emphasize that we are not deciding in this case whether a claimant who *did* file a suit to recover for asbestosis may file a second suit for cancer at a later date.

The trial court held that summary judgment was appropriate because in order to maintain an action under MCL 600.2922; MSA 27A.2922, the wrongful death act, the decedent himself must have been able to maintain the action but for his death. Since in all cases personal injury suits would have been barred before the date on which the wrongful death actions were filed, the wrongful death actions likewise were barred. The trial court also determined that the causes of action for cancer accrued at the same time as the causes of action for asbestosis.

The Court of Appeals panel unanimously held that under *Hawkins v Regional Medical Laboratories,* 415 Mich 420; 329 NW2d 729 (1982), the "limitation period [in the wrongful death actions] is governed by the provision applicable to the liability theory of the underlying wrongful act." *Larson v Johns-Manville Sales Corp,* 140 Mich App 254, 264; 365 NW2d 194 (1985). Two members of the panel then concluded that in the *Revard* and *Glazier* suits, the claims for cancer were likewise barred by the statute of limitations. The third member dissented, arguing that the discovery rule of accrual should be applied and that under this rule the claims for cancer were timely.

## II. BACKGROUND

Asbestos is a term used to describe several naturally occurring fibrous materials which combine high resistance to heat with great strength. For these reasons, asbestos has been extensively used in a wide variety of products. Green, *The inability of offensive collateral estoppel to fulfill its promise: An examination of estoppel in asbestos litigation,*

70 Iowa L R 141, 153 (1984). The inhalation of asbestos fibers in the occupational setting is known to cause or increase the risk of three diseases: asbestosis, lung cancer, and mesothelioma. Mansfield, *Asbestos: The cases and the insurance problem,* 15 Forum 860, 862 (1980).

*Asbestosis*

Asbestosis is the most common of the asbestos-related diseases. It is a nonmalignant response to inhaled asbestos fibers characterized by scarring. This disease is not always fatal, but can be disabling because of the decline in pulmonary function. The time between exposure to asbestos and the development of the disease is between ten and forty years. Mansfield, *supra* at 862; *Special Project, An analysis of the legal, social, and political issues raised by asbestos litigation,* 36 Vand L R 573, 579, n 10 (1983).

*Lung Cancer*

This is a primary cancer of the lung. The connection between exposure to asbestos and the development of lung cancer is premised on epidemiological studies showing an increase in the frequency of lung cancer among those exposed to asbestos. The combination of cigarette smoking and exposure to asbestos appears to present a greater risk of lung cancer than does either alone. Harrison, *Principles of Internal Medicine* (New York: McGraw Hill, 8th ed, 1977), pp 1386, 1380.

*Mesothelioma*

This is a malignant tumor which arises in the membrane lining the lungs and the chest cavity. 36 Vand L R 579, n 11. It appears to develop with only minimal exposure to asbestos. The latency period between exposure to asbestos and onset of the disease is twenty-five to forty years. Mansfield, *supra* at 864.

## III. DISCOVERY RULE AS THE BASIS FOR DETERMINING ACCRUAL DATE

The Court of Appeals found in all cases that the cause of action accrued at the time of the alleged wrongdoing rather than at the time the resultant harm was discovered. *Larson, supra* at 266. We now hold that the discovery rule is the proper method for determining the accrual date in these cases.

### A. *APPLICABLE STATUTES*

The relevant statute provides that a person has three years in which to bring a products liability action *after the claim accrues.*[2]

Under the general accrual statute, MCL 600.5827; MSA 27A.5827, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."[3] In order to construe this language, we look

---

[2] MCL 600.5805; MSA 27A.5805:

(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

\* \* \*

(9) The period of limitations is 3 years for a products liability action. However, in the case of a product which has been in use for not less than 10 years, the plaintiff, in proving a prima facie case, shall be required to do so without benefit of any presumption.

[3] MCL 600.5827; MSA 27A.5827:

Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

to earlier Supreme Court cases considering accrual and the policies implicated by the statutes.

### B. *COMPARABLE MICHIGAN CASE LAW*

In *Connelly v Paul Ruddy's Co,* 388 Mich 146, 151; 200 NW2d 70 (1972), we interpreted the accrual statute and stated that the "wrong" which triggers the statute is not the date of the breach of duty, but the date on which an injury results from that breach. If the statute were interpreted as requiring accrual from the date of the breach of duty, negligence actions would be barred before they could be brought.

The rationale behind the *Connelly* interpretation of the accrual statute is very similar to that behind the discovery rule. Applying a discovery rule to the accrual date would mean that a claim could not be barred by the statute of limitations before a plaintiff knew or should have known of the disease.

This Court has explicitly adopted a discovery rule in certain circumstances. In *Johnson v Caldwell,* 371 Mich 368, 379; 123 NW2d 785 (1963), this Court held that the cause of action for medical malpractice did not accrue until the plaintiff discovered or should have discovered the wrongful act. In another case based on negligent misrepresentation, the Court held that the "statute of limitations does not begin running until the point where plaintiff knows or should have known of this negligent misrepresentation." *Williams v Polgar,* 391 Mich 6, 25; 215 NW2d 149 (1974). We have suggested that in consumer actions against manufacturers the statute of limitations should not begin to run until a "plaintiff discovers or in the exercise of reasonable diligence should have discovered his loss." *Parish v B F Goodrich Co,* 395

Mich 271, 281; 235 NW2d 570 (1975). We have also applied the statutory discovery rule in breach of warranty cases. See *Parish,* 395 Mich 281; *Southgate Schools v West Side Construction Co,* 399 Mich 72, 82; 247 NW2d 884 (1976). See also *Yustick v Eli Lilly & Co,* 573 F Supp 1558, 1562 (ED Mich, 1983) (under Michigan law the discovery of the injury is the earliest possible date of accrual).

Clearly when the situation requires it, this Court will apply the discovery rule to determine the date of accrual. We now consider the implications of applying that rule in these cases.

### C. *POLICIES IN FAVOR OF USING A DISCOVERY RULE TO DETERMINE ACCRUAL DATE IN THESE PRODUCT LIABILITY CASES*

This Court has recently enumerated the policy considerations behind statutes of limitations.

> They encourage the prompt recovery of damages; they penalize plaintiffs who have not been industrious in pursuing their claims; they "afford security against stale demands when the circumstances would be unfavorable to a just examination and decision"; they relieve defendants of the prolonged fear of litigation; they prevent fraudulent claims from being asserted; and they " 'remedy . . . the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert.' " [*Lothian v Detroit,* 414 Mich 160, 166-167; 324 NW2d 9 (1982). Citations omitted.]

See, generally, 36 Vand L R 643; McGovern, *The status of statutes of limitations and statutes of repose in product liability actions: Present and future,* 16 Forum 416, 420 (1980-1981); Note, *Preserving causes of action in latent disease cases:*

*The* Locke v Johns-Manville Corp *date-of-the-injury accrual rule,* 68 Va L R 615, 619 (1982).

In summary, the primary purposes behind statutes of limitations are: 1) to encourage plaintiffs to pursue claims diligently, and 2) to protect defendants from having to defend against stale or fraudulent claims.

### 1. *Encouraging Plaintiffs to Pursue Claims Diligently*

Plaintiffs in asbestos cases typically were exposed to asbestos long before they suffered any measurable harm from the exposure.[4] Therefore,

> [i]f a worker files suit on the day he commences or terminates employment which involves breathing asbestos dust, he may as yet have no signs of developing asbestosis. Such a suit would be readily dismissed since there has been no injury, and thus "no cause of action shall have accrued." It would be unreasonable to dismiss the plaintiff's suit because there was no injury and then not allow him to bring the suit years later when asbestosis develops on the ground that the claim is barred by the statute of limitations. [*Strickland v Johns-Manville Int'l Corp,* 461 F Supp 215, 217 (SD Tex, 1978).]

See also *Harig v Johns-Manville Products Corp,* 284 Md 70, 80-81; 394 A2d 299 (1978) (it cannot be said that the tort victim can be charged with slumbering on his rights, for there was no notice of the existence of a cause of action).

Since there is obviously no interest in encouraging plaintiffs who are unable to determine they

---

[4] See, e.g., Harrison, *supra* at 1385 ("the disease is usually recognized after ten or more years of exposure"); Green, *supra* at 155, and 36 Vand L R 579 (suggesting a ten- to forty-year lag time between exposure to asbestos and the development of asbestosis); Mansfield, *supra* at 862 (the average time from first exposure to first clinical signs of asbestosis is about seventeen years).

have been injured to diligently pursue their claims, we find that adoption of the discovery rule would not interfere with this policy.

## 2. *Protection of Defendants*

Statutes of limitations are also intended to protect defendants from being forced to defend against fraudulent or stale claims. While adoption of the discovery rule will increase the time during which defendants are vulnerable to suit, we are not persuaded that the longer time period will make it significantly more difficult to defend against asbestos claims.

In asbestos cases,

> [k]ey issues to be litigated . . . are the existence of the disease, its proximate cause, and the resultant damage. Evidence relating to these issues tends to develop, rather than disappear, as time passes. [*Wilson v Johns-Manville Sales Corp*, 221 US App DC 337, 345; 684 F2d 111 (1982).]

For this reason, the concern for protecting defendants from "time-flawed evidence, fading memories, lost documents, etc." is less significant in these cases. *Eagle-Pitcher Industries, Inc v Cox*, 481 So 2d 517, 523 (Fla App, 1985). Further,

> the proof problems arising out of stale claims generally are limited in latent disease cases, because defendants usually maintain detailed records of their business activities, and any remaining proof problems ultimately affect the plaintiff as well as the defendant. [68 Va L R 635.]

For these reasons we do not believe defendants will be unduly burdened by the discovery rule in these cases. See also *Developments in the law—Statutes of limitations*, 63 Harv L R 1177, 1205

(1950). ("As between the duly diligent plaintiff and the wrongdoer, the courts have been unnecessarily sympathetic towards the latter, in shortening the period in which it is likely that the plaintiff will bring an action or in entirely depriving the plaintiff of a practical remedy".)

### D. *DISCOVERY RULE IN OTHER JURISDICTIONS*

We note that the logic behind applying a discovery rule to determine the accrual date in asbestos cases has proven persuasive to courts and commentators around the country. The general position is that "[t]he only practical time when the cause of action can be deemed to have accrued is the time when the plaintiff knows or should have known that he had asbestosis." *Strickland, supra* at 217. See also *Clutter v Johns-Manville Sales Corp,* 646 F2d 1151, 1156 (CA 6, 1981); *Borel v Fibreboard Paper Products Corp,* 493 F2d 1076, 1102 (CA 5, 1973), cert den 419 US 869 (1974); *Castorina v Lykes Bros Steamship Co,* 578 F Supp 1153, 1160 (SD Tex, 1984), aff'd 758 F2d 1025 (CA 5, 1985); *Neal v Carey Canadian Mines, Ltd,* 548 F Supp 357, 367 (ED Pa, 1982), aff'd 760 F2d 481 (CA 3, 1985); *Pauley v Combustion Engineering, Inc,* 528 F Supp 759, 764 (SD W Va, 1981); *Bendix Corp v Stagg,* 486 A2d 1150, 1153 (Del, 1984); *Nolan v Johns-Manville Asbestos,* 85 Ill 2d 161, 169-171; 421 NE2d 864 (1981); *Louisville Trust Co v Johns-Manville Products Corp,* 580 SW2d 497, 499 (Ky, 1979); *Harig, supra* at 71-72; *Myles v Johns-Manville Sales Corp,* 9 Ohio App 3d 257, 258-259; 459 NE2d 620 (1983); 36 Vand L R 651; Birnbaum, *"First breath's" last gasp: The discovery rule in products liability cases,* 13 Forum 279, 290 (1977); 68 Va L R 635.

But there are some contrary decisions. See, e.g.,

*Braswell v Flintkote Mines, Ltd*, 723 F2d 527, 532 (CA 7, 1983), cert den 467 US 1231 (1984) (cause of action accrued at the time of the wrongful act which was no later than the most recent exposure to asbestos fiber); *Steinhardt v Johns-Manville Corp*, 54 NY2d 1008, 1010-1011; 430 NE2d 1297 (1981) (cause of action accrues from the time of inhalation of the foreign substance); *Locke v Johns-Manville Corp*, 221 Va 951, 958-959; 275 SE2d 900 (1981) (cause of action accrues when, according to medical testimony, plaintiff was first harmed by asbestos); *Neubauer v Owens-Corning Fiberglas Corp*, 686 F2d 570, 577 (CA 7, 1982), cert den 459 US 1226 (1983) (cause of action accrues when the asbestos-caused disease becomes diagnosable).

E. *APPLICATION OF THE DISCOVERY RULE IN THESE CASES*

As the Court of Appeals correctly held, since these actions are wrongful death actions, the accrual date is governed by the statute of limitations of the underlying claim. *Hawkins, supra.*[5] Therefore, wrongful death suits premised on asbestosis accrue when the decedents knew or should have known of the asbestosis. As more than three years had elapsed from the date of accrual to the date of filing in all four cases, we hold that all claims

---

[5] In that case, in which we granted leave in order to determine "whether plaintiff's claim under the wrongful death act accrued on the date of her husband's death or in accordance with the accrual provisions of the malpractice statute of limitations," 410 Mich 870 (1980), we held that "actions brought pursuant to MCL 600.2922; MSA 27A.2922 accrue as provided by the statutory provisions governing the underlying liability theory and not at the date of death." 415 Mich 437. While Justices LEVIN and KAVANAGH opined that this holding was dicta, we cannot agree. The Court in *Hawkins* found that the wrongful death action was barred by the statute of limitations unless it was saved by MCL 600.5852; MSA 27A.5852. Thus, the entire opinion is premised on a determination of the accrual date.

premised on asbestosis are untimely. As this is the sole basis for relief in the *Larson* and the *Brimmer* cases, we affirm the dismissal of these suits. We also affirm the dismissal of the *Glazier* and *Revard* suits to the extent they are based on asbestosis claims. The resolution of the cancer claims in these two cases is discussed below.

### IV. APPLICATION OF DISCOVERY RULE FOR SUBSEQUENT, INDEPENDENT DAMAGES

Neither Glazier nor Revard brought an action for asbestosis within three years of the discovery of asbestosis; however, Glazier subsequently developed mesothelioma and Revard subsequently developed metastatic lung cancer. The issue now is does the discovery of asbestosis, an injury caused by exposure to asbestos, also trigger the running of the statute of limitations for the cancers which arise independently of the asbestosis,[6] but may be caused by the same exposure to asbestos.

The general rule is that subsequent damages do not give rise to a new cause of action. See *Connelly, supra* at 151; 51 Am Jur 2d, Limitation of Actions, § 136, p 706 ("Thus, if there is a coincidence of a negligent act with the fact of some damage, the cause of action comes into being and the statute of limitations begins to run even though the ultimate damage is unknown or unpredictable"). This rule is intended to promote finality

---

[6] Appellees do not contest the fact that asbestosis and cancers caused by exposure to asbestos are independent diseases. See also *Devlin v Johns-Manville Corp,* 202 NJ Super 556, 568; 495 A2d 495 (1905) ("asbestosis and asbestos related cancer are separate and distinct disease processes"). *Eagle-Pitcher Industries, supra,* 481 So 2d 522 ("[i]t is widely accepted by the scientific community that asbestosis and cancer are not medically linked, that is, cancer is not an outgrowth or complication of asbestosis"); *Pierce v Johns-Manville Sales Corp,* 296 Md 656, 664; 464 A2d 1020 (1983) (" 'the record shows that asbestosis and lung cancer are separate and distinct latent diseases and are not medically linked' ").

and efficiency by requiring plaintiffs to recover all potential damages in one suit. As we stated in *Connelly, supra,* "[l]ater damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred." Under a strict application of this rule, if Glazier and Revard had brought suits on the basis of their asbestosis, they would have been required at that time to seek damages for any possible future consequences resulting from their asbestos exposure. In this case, neither brought an action for asbestosis, and we are not faced with a situation in which plaintiffs are seeking to bring a second action for later damages. Compare *Wilson, supra* at 344; *Pierce, supra* at 664. Rather, we must decide whether these plaintiffs should be allowed to proceed with their first suit on the basis of asbestos exposure.

A. *SCOPE OF THE ASBESTOS LITIGATION*

It has been estimated that since the beginning of World War II, between eleven and thirteen million workers have been exposed to asbestos.[7] Since the early 1970s, over 30,000 claims have been filed against asbestos manufacturers.[8] The United States Department of Labor has estimated that total current and future costs attributable to asbestos could reach $540 billion.[9] There is concern about the ability of future claimants to receive adequate compensation because of the recent bankruptcy filings by asbestos manufacturers and

[7] 36 Vand L R 580.

[8] Hensler, et al., *Asbestos in the Courts: The Challenge of Mass Toxic Torts* (Santa Monica, Cal.: Rand, The Institute for Civil Justice 1985), p v.

[9] 36 Vand L R 581, n 22.

the growing numbers and cost of the claims.[10] Therefore, this Court is aware of the special needs for fairness to this large class of victims and for judicial efficiency in these cases. We believe that allowing the *Revard* and *Glazier* cases to proceed will further these goals.

### B. *FAIRNESS TO THESE PLAINTIFFS*

We are persuaded that to bar the suits in the *Revard* and *Glazier* cases would be unfair. In Michigan, in order to recover damages on the basis of future consequences, it is necessary for a plaintiff to demonstrate with "reasonable certainty" that the future consequences will occur. *Prince v Lott,* 369 Mich 606, 609; 120 NW2d 780 (1963). See also *King v Neller,* 228 Mich 15, 22; 199 NW 674 (1924) ("only such future damages can be recovered as the evidence makes reasonably certain will necessarily result from the injury sustained").

If Glazier or Revard had brought suit within three years of the discovery of asbestosis and attempted to recover for the likelihood of developing cancer in the future, either would have been unable to prove with "reasonable certainty" that he would develop cancer. It has been estimated that approximately fifteen percent of people with asbestosis later develop pleural mesothelioma. *Pierce, supra* at 659, n 2, citing Selikoff, Churg & Hammond, *Relation between exposure to asbestos and mesothelioma,* 272 New England J Med 560, 662 (1965). Similarly, it is difficult to quantify the additional risk of lung cancer posed by the asbestos exposure when, as in this case, the victim smoked cigarettes and cigarettes alone are a well-documented cause of lung cancer. Therefore, it is

---

[10] 36 Vand L R 581.

"highly likely" that in a suit brought for asbestosis "Johns-Manville would have successfully defended on the ground that the chance that [the defendant] would develop lung cancer was too speculative to support a damage award." *Pierce, supra* at 666. Even if this evidence were considered, the award would probably be an amount commensurate with the probability that the plaintiff would contract cancer, rather than full damages. See, e.g., *Eagle-Pitcher, supra* at 522. So for Glazier and Revard this is not only their first suit, but their first opportunity to obtain full and adequate compensation.

### C. *EFFICIENCY OF THE SYSTEM*

Refusing to allow a separate tolling period for cancer in these cases would lead to an increase in the already enormous costs of this litigation by encouraging people to bring lawsuits they would not otherwise have brought and to protract the suits which are brought for as long as possible in order to see if more serious consequences develop. Both of these considerations were aptly summarized in *Wilson, supra* at 346.

> Upon diagnosis of an initial illness, such as asbestosis, the injured party may not need or desire judicial relief. Other sources, such as workers' compensation or private insurance, may provide adequate recompense for the initial ailment. If no further disease ensues, the injured party would have no cause to litigate. However, if such a person is told that another, more serious disease may manifest itself later on, and that a remedy in court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court, for the consequence of a wait-and-see approach to the commencement of litigation may be too severe to risk. Moreover, a plain-

tiff's representative in such a case may be motivated to protract and delay once in court so that the full story of his client's condition will be known before the case is set for trial.

### D. *CONCLUSION*

The alternatives facing this Court are: on the one hand, to force all asbestosis victims who do not wish to bring suit for their asbestosis to sue for the possibility of contracting cancer, or, on the other hand, to allow these victims to wait until the discoverable appearance of cancer before bringing suit. The latter alternative seems to us infinitely preferable.

We believe that discouraging suits for relatively minor consequences of asbestos exposure will lead to a fairer allocation of resources to those victims who develop cancers. Rather than encouraging every plaintiff who develops asbestosis to recover an amount of money as compensation for the chance of getting cancer, we prefer to allow those who actually do develop cancer to obtain a full recovery.

### V. SUMMARY

For all the reasons discussed, we hold that plaintiffs who develop asbestosis may bring a suit within three years of the time they discover or should have discovered their disease. We also hold that plaintiffs who develop cancer which may be related to asbestos exposure, and who have not brought an earlier action for asbestosis, may bring an action to recover damages for cancer within three years of the date they discover or should have discovered the cancer.

We emphasize again that the rule we develop in this case for subsequent damages is premised on

the unique nature of the asbestos situation and is not applicable in other areas.

BRICKLEY, CAVANAGH, BOYLE, RILEY, and ARCHER, JJ., concurred with WILLIAMS, C.J.

LEVIN, J. (*separate opinion*). The opinion of the Court states[1] that in *Hawkins v Regional Medical Laboratories, PC,* 415 Mich 420, 437; 329 NW2d 729 (1982), this Court held that actions brought pursuant to the wrongful death act[2] "accrue as provided by the statutory provisions governing the underlying liability theory and not at the date of death."

I adhere to the view expressed in *Hawkins* that the statement in the lead opinion in *Hawkins,* quoted, as set forth above, in the opinion of the Court in the instant case, is obiter dictum.

The question presented in *Hawkins,* as noted in the opinion of the Court in the instant case, related to the accrual provisions of the medical malpractice statute of limitations.[3] The constructional and policy issues involved in the construction of the medical malpractice statute of limitations do not necessarily pertain to claims governed by the general statutes of limitations.

The general rule is that the cause of action for wrongful death does not accrue until the date of death.[4] The question purportedly decided in *Hawkins* deserves plenary consideration in this case, not involving the medical malpractice statute of limitations, where, in contrast with *Hawkins,* resolution of the question is necessary to decision.

[1] *Ante,* p 314, n 5.

[2] MCL 600.2922; MSA 27A.2922.

[3] MCL 600.5838; MSA 27A.5838.

[4] See 22 Am Jur 2d, Death, § 40, p 637; Prosser & Keeton, Torts (5th ed), § 127, p 957; *Coury v General Motors Corp,* 376 Mich 248; 137 NW2d 134 (1965), stating the general rule in a unanimous opinion purportedly overruled by the lead opinion in *Hawkins v Regional Medical Laboratories, PC, supra,* 437.