The MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS, Appellant,

v.

Cornelius J. MITCHELL, Jr., Appellee.

No. 148.

Court of Civil Appeals of Texas.

Tyler.

July 8, 1965.

John M. Smith, Roberts & Smith, Longview, for appellant.

Welby K. Parish, Gilmer, for appellee.

DUNAGAN, Chief Justice.

This cause of action was instituted in the 115th District Court of Upshur County on November 21, 1962, by the appellee, Cornelius J. Mitchell, Jr., against the appellant, The Millers Mutual Fire Insurance Company of Texas, under the collision section of the Texas Standard Family Automobile Policy issued by appellant to appellee covering loss by damages to his automobile, which policy provided for $100.00 deductible from the actual cash value. This suit resulted from an automobile driven by John E. Whitehead, into the side of an automobile driven by Cornelius J. Mitchell, Jr., the appellee in this case, on October 11, 1960, which resulted in extensive damage to Mitchell's automobile and personal injuries to himself. The appellant filed its answer to appellee's petition resisting payment of appellee's claim on the ground that a sworn proof of loss had not been filed within 91 days as required by the policy, estoppel, laches and stale demand.

The appellee affirmatively pleaded waiver of proof of loss by appellant and substantial compliance with the terms of the policy by appellee.

The trial court submitted all of the above theories by Special Issues to the jury and the jury answered all the issues against appellant.

The trial court entered judgment in favor of appellee in the sum of $691.00 based on the jury verdict.

At the conclusion of the evidence, appellant filed a motion for instructed verdict, which was denied, and thereafter a motion for judgment non obstante veredicto and amended motion for a new trial, both of which were denied.

David Swann, an insurance adjuster, was requested by Stropp-Davis Insurance Agency, the writer of the policy, to investigate this accident. Swann interviewed Mitchell one or two days after the accident and took a sworn written statement from him at that time as to how the accident happened. It is not shown that this statement contained any proof of the loss sustained by appellee as a result of the damages to his automobile. He also viewed the wrecked automobile which he said was a total loss. On this occasion Swann told Mitchell that since his car was a total loss, that they could go ahead and effect settlement at this time and since he (Mitchell) was then going into the hospital, that they could wait a few days and come back and take a proof of loss from him at a later date. In reply, Mitchell stated he did not wish to collect under his insurance policy at that time, but wanted to see if the liability carrier for Whitehead

would pay for his injuries and damages to his car. Swann next saw Mitchell about a week or week and a half later at which time Mitchell told him he was waiting for Charles Wyatt, who was the claim adjuster for Traders & General Insurance Company, which had the liability insurance coverage on Whitehead's car, to arrive to discuss settlement with him. Swann saw Mitchell again about two weeks later and Mitchell stated at that time that he did not wish to settle against his own policy, that he was in the process of effecting a settlement with Charles Wyatt, and that he was negotiating for settlement for his personal injuries and property damage to his car. Swann testified that after the above mentioned contacts, he never attempted to contact Mitchell any more in regard to settling with him, because Mitchell had told him he did not want to settle with them. He further testified that he reported to the appellant the statements of Mitchell that he did not desire to turn in a claim against his policy for damages to his car.

Mitchell testified that in his first meeting with Swann that Swann told him he would pay him any time he wanted his money. That some time way later, he did make demand on Swann for his money. He did not know when he made this demand and did not know whether it was before or after his settlement with Whitehead.

We should state here that Mitchell instituted suit against Whitehead in Gregg County seeking to recover only for his personal injuries as a result of this collision. This suit was disposed of by settlement in which Mitchell received $3,150.00. The record does not show what date the suit was instituted against Whitehead or the date of the settlement and disposition thereof. It was prior to the filing of the suit by Mitchell against The Millers Mutual Fire Insurance Company of Texas now before us.

Mitchell testified that the accident was entirely the fault of Whitehead and he wanted Whitehead to pay for his damages.

We think the record clearly reveals that whether Mitchell asserted a claim against the appellant for damages to his automobile depended on the disposition of his claim against Whitehead.

The parties entered into the following written stipulation:

"IT IS STIPULATED in this cause by the Plaintiff, Cornelius J. Mitchell, Jr. that he did not file a sworn proof of loss within 91 days after incurring his alleged loss with the Defendant, Millers Mutual Fire Insurance Company of Texas, under the provisions of Policy No. 1265714, issued to Cornelius J. Mitchell, Jr. by the said Millers Mutual Fire Insurance Company of Texas."

In its first point, appellant says: "The judgment of the Court can not stand at law because the undisputed evidence shows that Appellee did not file a sworn Proof of Loss with the Appellant within 91 days after such loss occurred, which sworn Proof of Loss was a condition precedent to any action upon the insurance policy against the Appellant." We sustain this point.

The parties having stipulated that Mitchell did not file a sworn proof of loss within 91 days as required by the policy, then the controlling question for this court to determine is whether the evidence adduced on the trial of this case is sufficient to show a waiver by appellant of the provision in the policy requiring appellee to file within 91 days of loss his sworn proof of loss.

The filing of a proof of loss, unless waived, is made a prerequisite to recover upon the policy. McKay v. American Central Ins. Co., 245 S.W.2d 529, (Tex.Civ. App.) 1952, no writ history.

Part III of the policy sued upon is styled "Physical Damage" and reads as follows:

"ACTION AGAINST COMPANY No action shall lie against the company unless, as a condition precedent there-

to, there shall have been full compliance with all the terms of this policy nor, until 30 days after proof of loss is filed and the amount of loss is determined as provided in this policy.

INSURED'S DUTIES IN EVENT OF LOSS In the event of loss the insured shall: (a) Protect the automobile, whether or not loss is covered by this policy, and any further loss due to the insured's failure to protect shall not be recoverable under this policy; reasonable expenses incurred in affording such protection shall be deemed incurred at the company's request; (b) file with the company, within 91 days after loss, his sworn proof of loss in such form and including such information as the company may reasonably require and shall, upon the company's request, exhibit the damaged property and submit to examination under oath."

And the policy further provides that:

"If the insured and the company fail to agree as to the amount of loss, either may, within 60 days after proof of loss is filed, demand an appraisal of the loss. In such event the insured and the company shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall state separately the actual cash value and the amount of loss and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The insured and the company shall each pay his chosen appraiser and shall bear equally the other expenses of the appraisal and umpire."

There was no discussion between the parties as to the amount or value of the loss accruing to the appellee or as to whether they could or could not agree on the amount or value of the loss. No appraisal was requested and none was made.

■ We think the evidence is insufficient to show that the insurance adjuster Swann by his acts or conduct prevented the insured from filing his proof of loss. Neither does the record show that the insured was misled by any act or omission on the part of the insurer's representative.

We are of the opinion that taking the entire testimony, as shown from this record, in its most favorable light, it is not shown by evidence of probative force that the appellant waived the provisions of the policy requiring proof of loss to be furnished or that appellee substantially complied with the terms of the policy. Federal Surety Co. v. Smith, 41 S.W.2d 210, (Tex.Com.App.) 1931; Scottish Union & Nat. Ins. Co. v. Clancey, 83 Tex. 113, 18 S.W. 439, 1892; Commercial Union Assur. Co. v. Preston, 115 Tex. 351, 282 S.W. 563, 45 A.L.R. 1016, 1926; Williams v. Bankers Fire And Marine Insurance Co., 277 S.W.2d 742, (Tex.Civ.App.) 1955, writ dismissed; Farmers Mutual Protective Association of Texas v. Thompson, 365 S.W.2d 226, (Tex.Civ.App.) 1963, writ refused, n. r. e.; McKay v. American Central Ins. Co., supra.

■ The appellant next by its Point No. 2 complains that: "The Appellee effectively settled his claim against the third party tort feasor which destroyed the subrogation rights of the Appellant and Appellee therefore waived his rights under the insurance policy issued by Appellant." This point should be sustained.

The third party tort feasor in this case was John E. Whitehead. It is undisputed that the appellee settled his cause of action with Mr. Whitehead. It is also undisputed that no payment has been made to the appellee by the appellant under the collision coverage of the insurance policy in question on the date of such settlement.

■ It has long been the rule that if an insured settles with or releases a wrongdoer from liability for a loss before payment of the loss has been made by the

insurance company, the insurance company's right of subrogation against the wrongdoer is thereby destroyed. The above principle was announced in Maryland Motor Car Ins. Co. v. Haggard, 168 S.W. 1011, (Tex.Civ.App.) 1914, no writ history, in which the court said:

"* * * And if the settlement made by defendant in error with the city of Ft. Worth had the legal effect to destroy the plaintiff in error's remedy of subrogation under the policy, then defendant in error thereby discharged the plaintiff in error from its obligation to pay him to the full extent to which he has defeated the plaintiff in error's remedy of subrogation. * * *"

For many other cases citing the same principles as are set forth above, see 32 Tex.Jur.2d 701, Sec. 468, 38 A.L.R.2d 1096, and 92 A.L.R.2d 102, 106. The policy contained the following subrogation provision:

"In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

 Moreover, a single wrongful or negligent act or omission causing an injury to both the person and the property of the same individual constitutes but one cause of action with separate items of damages; hence, the cause of action cannot be split, and a recovery of a judgment for either item of damage may be pleaded in bar of an action to recover for the other item of damage. Thus, when the appellee in the case at bar filed his cause of action against the third party tort feasor and did not include an item for property damages and subsequent to that time entered into a settlement this would be the same as a judgment and this settlement would have barred any claim this appellant had under its subrogation rights of the insurance policy in question. Cormier v. Highway Trucking Company, 312 S.W.2d 406, (Tex.Civ.App.) 1958, no writ history; Garrett v. Mathews, 343 S.W.2d 289, (Tex. Civ.App.) 1961, no writ history; 64 A.L.R. 663 and 127 A.L.R. 1081.

Under the record in this case, we think that appellee has failed to establish his right to recover under the policy.

In view of our disposition of this case, it is unnecessary to discuss the other points of error.

Judgment reversed and rendered for appellant.