Mertice Marie PECORINO, Individually
and as Personal Representative of the
Estate of Anthony Pecorino, Deceased
Appellant,

v.

RAYMARK INDUSTRIES, INC., et
al., Appellees.

No. 09–88–029 CV.

Court of Appeals of Texas,
Beaumont.

Dec. 29, 1988.
Concurring Opinion Jan. 26, 1989.
Rehearing Denied Jan. 26, 1989.

Greg Thompson, Port Arthur, for appellant.

O.J. Weber, Sandra Clark, Beaumont, Elizabeth Thompson, Thomas W. Taylor, Houston, for appellees.

## OPINION

BROOKSHIRE, Justice.

Summary judgment appeal.

This appeal is taken from a summary judgment proceeding. A summary judgment was granted in favor of the defendants below, who are Appellees and Cross–Appellants here. The granting of the motion for summary judgment was based upon the statute of limitations in an asbestos-mesothelioma case. The Appellant, at the threshold of her brief, characterizes this appeal thus:

"This is an appeal from a Summary Judgment granted in favor of the Defendants based upon the statute of limitations in an *asbestos induced mesothelioma lawsuit.*" (Emphasis added)

Anthony Pecorino had worked as an insulator at the refinery operated by Texaco, in Port Arthur. Mr. Pecorino was also known as "Tony Pecorino". He had worked as an insulator between the years of 1934 and 1977. During that period of time, he worked with and was exposed to asbestos-containing products, being the products manufactured by the defendants listed below. Mr. Pecorino contracted the disorder or disease of asbestosis at some time prior to November 25, 1980. On November 25, 1980, Tony Pecorino and his wife, Mertice Marie Pecorino, filed suit against the following corporations or entities that had manufactured the asbestos products which had caused his asbestosis. The defendants, in the 1980 lawsuit, were:

"1. Celotex Corporation

2. Owens–Corning Fiberglass Corporation

3. Eagle Picher Industries, Inc.

4. Pittsburg Corning Corp.

5. Unarco Industries

6. GAF Corporation

7. Armstrong World Industries, Inc.

8. Standard Asbestos Mfg. & Insulating Co.

9. Crown Cork and Seal Company, Inc.

10. Combustion Engineering, Inc.

11. Johns–Manville Sales Corporation".

Later, on November 17, 1981, Mr. and Mrs. Pecorino settled their 1980 lawsuit and causes of action for the sum of $125,000. A full and final release was signed and delivered on that date. The release has a crucial, important and governing effect on this appeal. More will be written about the said release later in this opinion.

At some time, in the early part of 1985, Mr. Pecorino learned that he was a victim of malignant mesothelioma. In 1985, Mr. and Mrs. Pecorino brought a suit in the United States District Court in the Eastern District of Texas. This later lawsuit was voluntarily non-suited by the plaintiffs therein. According to Appellant's brief, this was done in order to refile in the State Courts of Texas to have and require the Texas State Courts to determine Texas law.

Later, on July 24, 1985, Tony Pecorino died as a result of the growing, malignant mesothelioma. In March of 1986, Mrs. Pecorino filed suit against about 18 asbestos or asbestos products manufacturers. Mrs. Pecorino, individually and in her representative capacity, non-suited six of the original defendants in this suit. The remaining defendants below filed motions for summary judgment. The motions for summary judgment were based generally on three fundamental propositions. One, that the prior release, delivered for the $125,000, released any future claims including a claim for mesothelioma; two, the release contained an assignment, which said assignment, according to the defendants below, assigned the cause of action that Mrs. Pecorino, individually and in her representative capacity, possessed, if any, to the settling

defendants in the first 1980 case; three, that the statute of limitation has run on any claim based on mesothelioma, arguing that there was but one cause of action based upon the same duty owed to Tony Pecorino and a violation or breach of that duty and that, under the facts in this particular case, there was but one cause of action for the asbestosis and the asbestos-induced or asbestos-caused mesothelioma.

The district judge, after hearing the totality of the motion, granted the motion for summary judgment based on the statute of limitations. The district judge declined to grant the motions for summary judgment based on the prior release and on the assignment of the cause of action to the then settling, 1980 defendants. In capsule form, the district court found and held this instant case, filed by the Appellant to recover for mesothelioma which was brought about, induced or caused by exposure to asbestos, was barred by the statute of limitations. Therefore, the trial court ruled the defendants in the instant case were entitled to judgment in their favor as a matter of law.

Appellee, Raymark Industries, Inc., took the basic position that, on November 17, 1981, Mr. and Mrs. Pecorino settled their claims for any and all illnesses, personal injuries and damages arising out of, or in any way connected with, the use of, or exposure to, various insulating materials and the products that were manufactured, sold or distributed by the then settling defendants. Raymark Industries, Inc., maintains that this was the consideration for the payment of the $125,000 to the Pecorinos. Raymark Industries, Inc., further argues that the Pecorinos and their 1980–1981 attorney of record, the Honorable Walter Umphrey, executed a full and final release, following which the court then entered a take-nothing judgment in December of 1981, on the basis of the settlement and release of all claims that were related to asbestos exposure.

At sometime in 1985, Mr. and Mrs. Pecorino filed a lawsuit in the United States District Court alleging, then, that Mr. Pecorino, who was still living, had mesothelioma. This federal court proceeding was voluntarily non-suited. Mertice Marie Pecorino then filed this lawsuit in the 60th District Court of Jefferson County. On March 27, 1986, suit was filed following the death of Anthony (Tony) Pecorino in July of 1985. In 1986, in the State court action, Mrs. Pecorino, in her respective capacities, sued the following:

1. A.C. AND S., INC.
2. CELOTEX CORPORATION
3. EAGLE–PICHER INDUSTRIES, INC.
4. FIBREBOARD CORPORATION
5. GAF CORPORATION
6. ARMSTRONG WORLD INDUSTRIES, INC.
7. KEENE CORPORATION
8. NICOLET INDUSTRIES, INC.
9. OWENS–CORNING FIBERGLAS CORPORATION
10. OWENS–ILLINOIS, INC.
11. PITTSBURGH CORNING CORPORATION
12. H.K. PORTER COMPANY, INC.
13. RAYMARK INDUSTRIES, INC.
14. STANDARD INSULATIONS, INC.
15. MINNESOTA MINING & MANUFACTURING CORPORATION
16. NATIONAL GYPSUM COMPANY
17. UNITED STATES GYPSUM CORPORATION
18. TURNER & NEWALL PLC.

Raymark Industries, Inc., argues that the non-suited defendants, being GAF Corporation; Turner & Newall, PLC; Nicolet Industries, Inc.; Standard Insulations, Inc., are severed from the instant case because the same are in bankruptcy. Raymark Industries, Inc., states that the Appellees here are entitled to judgment as a matter of law because the Appellant's suit is barred by the release herein, the statute of limitations applicable thereto, the assignment herein and, lastly, res judicata.

Raymark Industries, Inc., also contends that, in the Appellant's 1980 lawsuit, in paragraph X thereof, Mr. and Mrs. Pecorino definitely put into issue the following matters. Paragraph X, of Appellant's 1980 complaint, reads as follows:

"[T]he Plaintiff was permanently and severely injured; that he has sustained a very serious and permanent injury to his body; that he is suffering from the disease Asbestosis; that he suffers from shortness of breath, inability to breathe, clubbing of the fingers and toes; that it is necessary that Plaintiff have available to him at all times a container of oxygen and a breathing aid devise, in order that he may be able to breathe; that Plaintiff has extreme difficulty sleeping; that he tires easily; that he constantly coughs; that his future outlook is very dim; that he has sought the services of physicians in an effort to cure or arrest the condition from which he is suffering, but to no avail; that the Plaintiff has lost his good health, all of which, at some time in the future, will be permanently disabling to him."

Raymark further vehemently argues that the 1980 lawsuit placed into issue the question of asbestos-related or asbestos-induced diseases, including specifically mesothelioma.

In the United States District Court for the Eastern District of Texas, Beaumont, Division, in the case styled *"Anthony Pecorino, et. ux v. Fibreboard Corporation, et al."*, Civil Action No. B–80–794–CA, entitled Pre–Trial Order, there was filed:

"Following a pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure, and the local rule of this Court, it is agreed and and stipulated and ordered as follows:

. . . .

"MOTIONS

. . . .

"(b) Plaintiff and Defendants have filed motions to allow the use of depositions and court testimony taken in prior cases involving claims against manufacturers of asbestos-contained products causing asbestosis, mesothelioma and cancer where the testimony is relevant to the state of the scientific and medical knowledge, the knowledge of the Defendants concerning the disease asbestosis and the knowledge generally of the

potential dangers resulting from exposure to asbestos-containing products."

The above Pre–Trial Order was dated in 1981.

The Release that brought about the settlement in 1981 reads as follows:

"RELEASE IN FULL

"THE STATE OF TEXAS ()

"COUNTY OF JEFFERSON ()

" 'Released Parties' or 'Defendants' wherever used herein shall mean FIBREBOARD CORPORATION, ARMSTRONG CORK COMPANY, CELOTEX CORPORATION (successor to Philip Carey Corporation), COMBUSTION ENGINEERING, INC., CROWN CORK & SEAL COMPANY, INC. (successor to Mundet Cork Corporation), JOHNS–MANVILLE SALES CORPORATION (successor by merger to Johns–Manville Products Corporation), KEENE CORPORATION, KEENE BUILDING PRODUCTS CORPORATION, BALDWIN–EHRET–HILL, INC. and their predecessors and successors, NICOLET, INC., OWENS–CORNING FIBERGLAS CORPORATION, PITTSBURGH CORNING CORPORATION, RUBEROID COMPANY, a division of GAF CORPORATION, STANDARD ASBESTOS MANUFACTURING AND INSULATING COMPANY, UNARCO INDUSTRIES, INC., and their respective agents, servants, employees, legal representatives, insurers, predecessors, successors, receivers and assigns.

"WHEREAS, it is alleged that ANTHONY PECORINO sustained severe and permanent injuries as a result of working with and exposure to various insulating materials and other products, some of which contained asbestos, manufactured, sold, or distributed by Released Parties, and the said ANTHONY PECORINO and wife, MYRTIS PECORINO, as Plaintiffs, instituted Civil Action No. B–80–794–CA in the United States District Court for the Eastern District of Texas, Beaumont Division, to recover for their damages and expenses described above and set out more fully in the pleadings in said Civil Action, which are

incorporated herein for explanation only; and

"WHEREAS, in order to avoid further time, expense and uncertainties of litigation, the Released Parties and the undersigned ANTHONY PECORINO and wife, MYRTIS PECORINO, desire to enter into a final compromise and settlement of any and all claims which they may have or may hereafter have against the Released Parties for injuries to ANTHONY PECORINO, or arising directly or indirectly from such injuries;

"NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That we, the undersigned ANTHONY PECORINO and wife, MYRTIS PECORINO, for and in consideration of the sum of ONE HUNDRED TWENTY–FIVE THOUSAND AND NO/100 DOLLARS ($125,000.00), case in hand paid, the receipt of which is hereby acknowledged, joined by their attorney, WALTER UMPHREY, hereby fully and finally RELEASE, ACQUIT and FOREVER DISCHARGE the Released Parties and all other persons, firms and corporations who might in any way be claimed to be legally responsible, directly or indirectly, for the aforesaid occurrences and the consequences of them (each and all, though some are not specifically named herein) from all claims, demands, causes of action, including by example, but not limited to express and implied warranties, strict liability, negligence, debt, damages, punitive and exemplary damages, loss of consortium, damages under Wrongful Death and Survival Statutes, Worker's Compensation liens, common law and statutory penalties or recompense, liens, attorney's fees, judgment and expenses of any type whatsoever, in any manner arising out of or in any way connected with, directly or indirectly, the exposures or occurrences of injuries to ANTHONY PECORINO, above described, as well as any consequence thereof.

"We intend this release to be as broad and comprehensive as possible, so that the Released Parties shall never be liable, directly or indirectly, to us or our beneficiaries, heirs, successors or assigns or any person, firm or corporation claiming by, through, under or on behalf of us or them, for any claims, demands, actions or causes of action of whatsoever nature or character arising out of any illness of ANTHONY PECORINO in any way connected with use of or exposure to various insulating materials and products manufactured, sold or distributed by the Released Parties.

"This agreement does not release any cause of action which MYRTIS PECORINO may have for asbestos-related diseases to her own body.

"Except with respect to the Plaintiffs, nothing in their release, nor the act of any party released hereby in accepting this release, shall affect any rights or liabilities of or between the released parties.

"It is the express intention of the parties to this release that the consideration stated herein fully and completely compensates and satisfies the undersigned for all injuries, damages, expenses and all other claims released hereby. The undersigned expressly contract that no claim or cause of action of any type is reserved against anyone or any company whomsoever whether named or unnamed. If any other claims exist, whether released herein or not, whether foreseeable or unforeseeable, the undersigned hereby assign those claims in full to the released parties.

"Only the consideration stated aforesaid has been paid or agreed to be paid for this release. The amount of consideration is contractual and not a mere recital.

"The undersigned guarantees there is no outstanding claim or lien of any character in any way arising out of this occurrence other than the claims now being released and hereafter barred.

"In consideration for the payment of the aforesaid sum, ANTHONY PECORINO and wife, MYRTIS PECORINO agree to indemnify and hold harmless Released Parties from any further payment of damages, debts, liens, charges and expenses of any character incurred by or on behalf of the Released Parties as a result of any further claim by ANTHONY PECORINO and wife, MYRTIS PECORINO or their representatives, heirs, or assigns. ANTHONY PECORINO and wife, MYRTIS PECORINO

further agree to indemnify and hold harmless Released Parties from any liability for the payment of damages by reason of any claims asserted against the Released Parties for indemnity and/or contribution as a result of any claim, demand, judgment or payment made by or to ANTHONY PECORINO and wife, MYRTIS PECORINO or their representatives, heirs or assigns, arising out of any illness of ANTHONY PECORINO in any way connected with use of or exposure to various insulating materials and products manufactured, sold or distributed by the Released Parties.

"It is further agreed and understood that the above numbered Civil Action shall be concluded by the entry of a Take Nothing Judgment. It is the intent and purpose of this agreement that at no time will the Defendants/Released Parties named herein be called upon to pay any further sum or incur any further expense by reason of any fact, matter or claim, directly or indirectly, or by way of any action for indemnity or contribution, arising out of or predicated upon any claim, demand, judgment or payment made by or to ANTHONY PECORINO or MYRTIS PECORINO their beneficiaries, successors, heirs or assigns, arising out of the injuries to ANTHONY PECORINO.

"The undersigned, each and all, understand, represent and warrant this release to be a final compromise of a disputed claim and not an admission of liability by or on the part of the Released Parties. It is contracted that neither this instrument, the compromise and settlement agreement evidenced hereby nor any evidence relating thereto, will ever be admissible as evidence against the Released Parties in any suit, claim or proceeding of any nature. However, this agreement is and may be asserted by the Released Parties as an absolute and final bar to any claim or proceeding now pending or hereafter brought.

"As a further inducement to the parties with whom we are making this settlement, we acknowledge that all medical expenses, doctor and hospital bills incurred by reason of the injuries of ANTHONY PECORINO have been or will be paid, and that there

are no outstanding liens against any recovery by us of any kind or character, but we agree to indemnify and hold harmless Released Parties from any liability for any outstanding liens or expense.

"By our signatures below we represent that we understand this Final Release and Indemnity constitutes a final and complete release of all claims regardless of their kind or character including any possible claim which might be discovered in the future. We acknowledge that we rely solely upon our own knowledge and information as to the nature, extent and duration of the injuries, damages and our legal rights, as well as the liability of the parties here released, and freely acknowledge that we have not been influenced by any representations made by or in behalf of the Released Parties.

"WITNESS OUR HANDS TO THIS INSTRUMENT IN TRIPLICATE this the 17 day of Nov., 1981.

/S/ "Anthony Pecorino
ANTHONY PECORINO

/S/ "Mertice Pecorino
MYRTIS PECORINO

/S/ "Walter Umphrey
WALTER UMPHREY

"THE STATE OF TEXAS ( )

"COUNTY OF Jeff. ( )

"BEFORE ME, the undersigned authority, on this day personally appeared ANTHONY PECORINO, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in all capacities in which he is or has purported to be qualified.

"GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 17 day of Nov., 1981.

/S/ "Terry Doyle
"NOTARY PUBLIC IN AND
"FOR THE STATE OF TEXAS
"Terry Doyle

"My Commission Expires:

"11–26–84

"THE STATE OF TEXAS ()

"COUNTY OF Jeff.   ()

"BEFORE ME, the undersigned authority, on this day personally appeared MYRTIS PECORINO, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed and in all capacities in which she is or has purported to be qualified.

"GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 7 day of Nov., 1981.

/S/ "Terry Doyle
"NOTARY PUBLIC IN AND
"FOR THE STATE OF TEXAS
/S/ "Terry Doyle

"My Commission Expires:

"11–26–84

"I certify that I am attorney of record for all Plaintiffs in the above described lawsuit. I have read the foregoing Release to each of the signatories to this contract and have fully explained to them the legal effect thereof and after such explanation they were fully satisfied to release their claims. In consideration of the inclusion of my name as attorney on the drafts, I join in the execution of this instrument and release any claims I might have for myself or any law firm or any other firm with any interest in the matters released herein.

/S/ "Walter Umphrey
WALTER UMPHREY"

Mrs. Pecorino's present pleadings, in the only State court suit now subjudice, contain the following pertinent paragraphs:

"I.

"Plaintiff is a resident of Port Arthur, Jefferson County, Texas. The Plaintiff MERTICE MARIE PECORINO, is the surviving spouse of ANTHONY PECORINO. ANTHONY PECORINO died on the 24th day of July, 1985. Further, Plaintiff would show that the deceased, ANTHONY PECORINO, worked at various local industrial refineries for approximately 34 years as an insulator, a gang pusher and an insulator mechanic until he retired in 1977, during all of which time he was exposed to asbestos dust and/or fibers.

"II.

"The Defendants, during all the times herein mentioned and for a long time prior thereto, have been and now are engaged in the manufacture of materials used for insulation containing asbestos; that the products manufactured, compounded, and prepared by Defendant, acting through their servants, employees, representatives and agents were and are placed on the market to be purchased and used by the public.

"III.

"The Plaintiff says that during the years 1934 to 1977, inclusive, the deceased was employed as an insulator, gang pusher and an insulator mechanic, and that in the performance of his duties as an insulator, gang pusher and insulator mechanic, he was required to handle large quantities of the products manufactured and distributed by the above-named Defendants. That in addition to the fact that the deceased actually used the products manufactured by the above-named Defendants, and many more, as an insulator, gang pusher and an insulator mechanic, and specifically many and various products containing asbestos, the Plaintiff says that on many of the jobs, while not using himself the specific products manufactured by the Defendants, the deceased was nevertheless exposed to the dangerous materials and especially those dust and fibers which were used by other workers in the same area at which the deceased was working.

"IV.

"That during the period of time in which the deceased was employed as an insulator, gang pusher and an insulator mechanic, from the years 1934 to 1977, inclusive, in the course of his employment, under strict liability and violation of the Uniform Commercial Code, and alternatively, due to the negligence and carelessness of the Defendants, was caused to come in contact with

the insulation produced and manufactured and distributed by the Defendants, and its chemical compounds deleterious substances and matter, did sustain severe, permanent and disabling injuries as hereinafter set forth."

The gravamen and basic thrust of the State court pleadings of Mrs. Pecorino were that Mr. Anthony Pecorino, over the period of years (1934 to 1977) during which he had been employed as an insulator, gang pusher and as an insulator mechanic, the Defendants had been guilty of negligence and that the deceased would not have sustained his injuries and damages had not the Defendants been negligent. The present pleadings also contained a paragraph on the doctrine of strict liability as well as a breach of the uniform commercial code. It was further pleaded that the Defendants' breach of these various duties (as well as the fact that these products precipitated great harm which was not a consequence of any unique or unforeseeable reaction of the user) caused Mr. Pecorino to be permanently and severely injured; and, hence, he had sustained very serious and permanent injuries to his body and that he was suffering from the disease mesothelioma and that he suffered from shortness of breath, inability to breathe; that the deceased had extreme difficulty in sleeping, that he tired easily, that he constantly coughed and that his future outlook was very dim and that he had sought the services of physicians in an effort to cure or arrest the condition from which he was suffering, but to no avail. Thus, the deceased had lost his good health. All of these matters resulted in permanent disability to Mr. Pecorino and his demise.

There exists a pleading for punitive damages. There is this sentence, in the live pleadings in the State Court:

"This action is brought pursuant to Revised Civil Statutes, Article 4671, Article 5525, and Article 4675."

Also, in the live petition, we find:

"Plaintiff would further show that the disease from which the deceased suffered, to-wit: Mesothelioma, is caused solely by exposure to asbestos dust and/or fibers."

It is further plead that:

"Pursuant to Article 5525, the Plaintiff would show that the deceased was made to suffer and sustain conscious pain and suffering and mental anguish, from the time of the inception of the disease to the time of his death.

. . . .

"Additionally, pursuant to Article 5525, and Article 4671 through 4678, the Plaintiff would show that the deceased incurred extensive medical expenses. . . ."

Among other relief pleaded for, there was a paragraph petitioning for prejudgment interest.

The release has not been set aside as having been obtained through fraud, accident or mistake or trickery, or other infirmity. The consideration, itself, for the release had not been assailed or challenged.

■ We decide that the Appellant put in litigation and raised the issue, in the 1980 action, of whether Mr. Pecorino suffered from any asbestos-related or asbestos-induced disease, both in his pleadings and in the pretrial orders. These types of asbestos-based diseases had to be within the contemplation of the Pecorinos by 1981; or, at the very least, they should have had constructive knowledge or should have known of asbestos-related or induced diseases or disorders, considering the plain, all-encompassing wording of the full Release.

Hence, we conclude that the trial judge correctly decided the motion by applying the two-year statute of limitations. As a corollary thereto, we perceive that the 1981 release, and its wording set out in full above, put into issue any asbestosis and any asbestos-related disease, including mesothelioma, and visited constructive knowledge of this disease on the Pecorinos. We decide the Pecorinos knew or should have known about mesothelioma when the release was carefully read and fully explained to them, including the total legal effect thereof by their able, thorough attorney of record. Hence, the two year statute

of limitations had run before the Appellant filed her 1986 state lawsuit.

■ As a separate and independent grounds, however, we conclude that Texas law is now well settled that a plaintiff has but one cause of action for the losses, injuries and damages arising from a single breach of duty, a single causal connection, being a single cause of action. In *Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336 (1954), the Supreme Court wrote, at 269 S.W.2d at pages 337–338:

> " 'If, however, the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right,—then, *be the damage however slight,* limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar.' (Emphasis added.)"

The Supreme Court reasoned that, after a careful reading of *Fromme's* pleadings and the evidence, the respondent's legal rights were invaded at the moment water from the petitioner's plant began to flow upon respondent's land and that the water was wrongfully discharged from the petitioner's plant onto the respondent's land as early as February, 1948. The court wrote, at 269 S.W.2d page 338:

> "Respondent's cause of action accrued at the time petitioner began wrongfully discharging the water on the land, and not on the date when the extent of the damages to the land were fully ascertainable....
>
> ....
>
> "The evidence further shows that this wrongful invasion of plaintiff's rights occurred at a date more than two years prior to the filing of the original petition, and injury continued until the water was diverted from respondent's land, as stated above. Admitting that the greater part of the damage did not occur until within two years next preceding the fil-

ing of the suit, the fact does not alter the rule which we have concluded is controlling in this case."

We think that the principle announced in the case of *Coody v. A.H. Robins Company, Inc.,* 696 S.W.2d 154 (Tex.App.—San Antonio 1985, no writ), is governing. We quote from *Coody, supra,* at page 156:

> "The discovery rule speaks only of discovery of the injury. It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action. Once appellant learned that she had been injured, the burden was on her to determine whether she should file suit.... [Citations omitted]"

In the appeal subjudice, not only had injury and damage to the physical person of Mr. Pecorino been manifested in 1980, prior to the 1980 lawsuit; but there was actually filed a lawsuit and money was recovered by way of a settlement and by way of a release. That lawsuit was filed in the United States District Court and Mr. and Mrs. Pecorino had able and outstanding counsel to advise them. The filing of the lawsuit in November of 1980, with the discovery proceedings, with the legal advice and with the execution, delivery and signing of the release (along with the explanation and understanding of the release and its legal results—all known to the Pecorinos), proved that they had knowledge that they had suffered a serious, severe legal injury and disastrous legal damages because of Anthony Pecorino's exposure to asbestos from 1937 to 1977 and that, indeed, parts of his own personal body had been injured and damaged and his health and well-being destroyed.

We conclude, under settled Texas law, that Mr. Anthony Pecorino's asbestos exposure, which resulted in asbestosis, at least by 1980, resulted in a breach of duty owed to him and that the legal injuries and legal damages accrued to him not later than 1980.

Furthermore, it should be noted that when the release was signed the Pecorinos did think about any exclusions or exceptions from the general, full and final re-

lease when they provided that *damages to the person of Mrs. Pecorino would not be released.* The release, consequently, contains this paragraph:

"This agreement does not release any cause of action which MYRTIS PECORINO may have for asbestos-related diseases to her own body."

It should also be noticed that any actions under the survival of action statute or the death statute were released. The Pecorinos were contemplating the future, very definitely, when they released these rights.

Mrs. Pecorino, personally, and in her representative capacity as the personal representative of the decedent's estate, takes the position that the second case in the United States District Court was non-suited and refiled in the State court for the real purpose of having a determination of the Texas law. The second case in the United States District Court and the case on appeal sub judice are the same. Seeking an opinion by a Texas court may very well have been the reason and motivation for the non-suit in the Federal court and the refiling in the State court. However, it is important to point out that had the Plaintiff continued her litigation in the United States court system, she would have been met at the Fifth Circuit with *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985), and *Graffagnino v. Fibreboard Corp.*, 776 F.2d 1307 (5th Cir.1985), *rehearing denied*, 781 F.2d 1111 (5th Cir. 1986). In *Gideon, supra*, the United States Court of Appeals for the Fifth Circuit, in part, wrote, at page 1136:

"An actionable tort, whether based on negligence or strict liability, consists of two elements: a failure to act in accordance with the standard of care required by law and a resultant injury. While the sale of a defective product creates a potential for liability, the law grants no cause of action for inchoate wrongs. However egregious the legal fault, there is no cause of action for negligence or products liability until there is 'actual loss or damage resulting to the interest of another.'

"While, therefore, 'the threat of future harm, not yet realized, is not enough,' once injury results there is but a single tort and not a series of separate torts, one for each resultant harm. The cause of action thus created is for all the damage caused by the single legal wrong, and a plaintiff may not split this cause of action by seeking damages for some of his injuries in one suit and for later-developing injuries in another. The cause of action 'inheres in the causative aspects of a breach of a legal duty, the wrongful act itself, and not in the various forms of harm which result therefrom....' He does not have a discrete cause of action for each harm.

"Gideon claims that, 'as a result of working with each of the defendants' asbestos products,' he 'has been seriously and permanently injured as the result of contracting asbestosis, lung cancer, pulmonary disease, possibly mesothelioma, and other related diseases now developed, in the developing stages or which will subsequently develop as a result of his contact with the asbestos products manufactured, sold and distributed by the various defendant.'

"Gideon's theory of recovery, supported by testimony in the record, is that he inhaled asbestos fibers while working with defective asbestos products. This initiated a scarring process that destroyed some of the air sacs in his lungs. Other changes occured as the fibers worked through his lung tissues and lodged in the membrane surrounding his lungs, causing pleural thickening, plaques, calcifications, and asbestosis as well as the likely future development of mesothelioma and cancer. His injury is thus the inhalation of fibers and the invasion of his body by those fibers, thus causing him physical damage.

"Under Texas law, therefore, Gideon has but one cause of action for all the damages caused by the defendants' legal wrong; the diseases that have developed and will in probability develop are included within this cause of action, for they are but part of the sequence of harms resulting from the alleged breach of le-

gal duty. Gideon could not split his cause of action and recover damages for asbestosis, then later sue for damages caused by such other pulmonary disease as might develop, then still later sue for cancer should cancer appear. His claim includes, without limitation, all damages for future pain and suffering, inability to work in the future, reduced life expectancy, future medical expenses, and future disabilities and diseases that will probably develop from present injuries."

An interesting and challenging case is the case of *Graffagnino v. Fibreboard Corp.*, 776 F.2d 1307 (5th Cir.1985). In the *Graffagnino* case, we notice that several of the attorneys in that litigation are active in the appeal pending before us. In *Graffagnino, supra,* by way of a per curiam opinion, the Fifth Circuit held, at page 1308:

"Under Texas law, exposure to asbestos can give rise to only a single cause of action for all injuries that are caused by this exposure, whether or not all the injuries have become manifest at the time the cause of action accrues. When a plaintiff and his wife have executed a valid release of an asbestos-related claim and the plaintiff dies of an asbestos-caused disease that was diagnosed after the execution of the release, the wife cannot maintain a wrongful death or survival action against the released parties. When the release purports to assign to the released parties any remaining claims, the wife cannot maintain an action against other, unreleased, parties.

. . . .

"In early 1981, Graffangnino [sic] and his wife filed suit for injuries caused by his exposure to asbestos insulating materials. That case was settled for $175,-000.00. The plaintiffs, joined by their attorney, signed a detailed and comprehensive release of their claims; this release also purported to assign to the released parties any remaining claims. . . .

"In 1983, the decedent was found to be suffering from mesothelioma, from which he died within a month of the diagnosis. Like asbestosis, mesothelioma is a lung disease caused by exposure to airborne asbestos. Two days after his death, his wife filed this diversity action against several defendants, some of which had been parties to the earlier release.

"The court found that the 1981 release, which purported to cover 'any and all claims which [Graffangnino [sic] and his wife] may have or may hereafter have' for injuries caused by 'working with and exposure to various insulating materials and other products, some of which contained asbestos, manufactured, sold, or distributed by Released Parties,' unambiguously barred an action based on the mesothelioma that developed after the execution of the release. The court also found that the assignment contained in the release was valid and that an action against defendants that were not party to the 1981 release was therefore barred."

### The Texas Doctrine Against the Splitting Of A Cause of Action

The rule against splitting a cause of action is a crucial, integral part of the broader doctrine of res judicata. The splitting or dividing of a cause of action for damages has not been allowed under Texas law. *Southern Pac. Transp. Co. v. State Farm Mut. Ins. Co.*, 480 S.W.2d 59 (Tex.Civ.App. —Corpus Christi 1972, no writ); *Millers Mutual Fire Ins. Co. of Tex. v. Mitchell,* 392 S.W.2d 703 (Tex.Civ.App.—Tyler 1965, no writ). In *Millers Mutual Fire Ins. Co. of Tex., supra,* the court reasoned and held that a cause of action cannot be split or divided, and a recovery of a judgment for an element of damage may be pleaded in bar of an action to recover for another element of damage. *Cormier v. Highway Trucking Company,* 312 S.W.2d 406 (Tex. Civ.App.—San Antonio 1958, no writ).

The several pleadings of the Pecorinos are based upon the same exposure and the same years of exposure to asbestos and asbestos-containing products. Under the decisional precedents of our state, one cause of action arose. Hence, this cause of action could not be split for the purpose of recovering additional monetary damages.

On this basis, we affirm the trial court's judgment.

### The Release as a Contract

■ The wording of the release conclusively shows that the parties contracted with each other, and among themselves, to complete and conclude a full, final release, and that the Pecorinos contracted that no claim or cause of action was reserved to them against anyone or any company, whether named or unnamed. The Pecorinos also contracted that if any other claims existed, whether released or not, whether foreseeable or unforeseeable, even these claims were assigned in full to the released parties and that the consideration of $125,000 was actually contractual. Again, this wording shows the intentions and knowledge, both actual and constructive, of the parties. We perceive that the wording of the release and the release, itself, is so inextricably and inexorably intertwined, commingled, mixed and united with the statutes of limitation issue that the full release—being an integral and necessary part of the statutes of limitation questions—must be considered by us. Hence, on the wording of the release, as a separate basis, we affirm the trial court's decision. Furthermore, it is glaringly clear that the Pecorinos actually assigned any future claims or future damages to the released parties.

The Appellant places major reliance on *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315 (5th Cir.), *modified*, 797 F.2d 256 (1986). The modification clearly and glaringly proves that the Fifth Circuit Court was concerned with what constitutes an actionable injury to a Jones Act seaman. Mr. Pecorino was, of course, not a Jones Act seaman. Hagerty was soaked with toxic, carcinogenic chemicals while performing his duties as a Jones Act seaman. In *Hagerty, supra,* the court held that a tortuous cause of action arises and accrues when a victim suffers harm caused by a defendant's wrong. When the injury does occur and the injury is discovered by the victim, the cause of action accrues, begins and arises and the victim is then entitled to sue for all of his damages, past, present and future. The victim may file his suit when the injury occurs and limitation also begins to run on the time within which the suit may be instituted. The Fifth Circuit wrote, in *Hagerty,* at pages 316–317:

> "The victim is entitled to only one cause of action and, if his injuries subsequently worsen, he has no further opportunity for recompense."
>
> . . . .
>
> "The cause of action has accrued if Hagerty's injury was discernible on the occasion when he was drenched with the toxic chemical. *Albertson v. T.J. Stevenson & Co., Inc.,* 749 F.2d 223 (5th Cir. 1984). Dizziness, leg cramps, and a persistent stinging sensation in feet and fingers suggest some harm or injury...."

In *Hagerty, supra,* the Fifth Circuit was construing an important federal statute. The Fifth Circuit was not sitting in a diversity case applying state law. The Fifth Circuit did criticize and comment upon the single cause of action rule, commenting, at page 321:

> "When the proper case is presented, *this panel hopes* that the en banc court will consider this problem, if Congress has not acted upon it by that time." (Emphasis added)

We think that Appellant's reliance on *Hagerty, supra,* is misplaced, since, under the basic rationale and holding of *Hagerty, supra,* Appellant's cause of action arose and was in being by 1980. Furthermore, in *Hagerty, supra,* there had been no full release given and worded as in this appeal.

Appellant's presently alleged cause of action was based on theories of products liability, negligence, gross negligence and breach of warranty. The claims based on products liability, negligence and gross negligence are barred by the two-year statute of limitation. *TEX.REV.CIV.STAT. ANN. art. 5526* (Vernon 1958 & Supp. 1985), *repealed* by Acts 1985, 69th Leg., ch. 959, sec. 9(1), eff. Sept. 1, 1985. *See TEX. CIV.PRAC. & REM.CODE Sec. 16.003* (Vernon 1986). *See Roman v. A.H. Robins Co.,* 518 F.2d 970, 971 (5th Cir.1975); *Cleveland v. Square–D. Co.,* 613 S.W.2d 790, 792 (Tex.Civ.App.—Houston [14th

Dist.] 1981, no writ); RESTATEMENT (SECOND) OF TORTS Sec. 402A (1965).

In *Coody v. A.H. Robins Co., Inc.*, 696 S.W.2d 154 (Tex.App.—San Antonio 1985, no writ), the court wrote, at page 155:

"The action based on warranty is governed by the four-year statute found in TEX.BUS. & COM.CODE ANN. Sec. 2.725(a) (Vernon 1968)."

Appellant's cause of action, based on breach of warranty, is barred by the four-year statute of limitation. *TEX.BUS. & COM.CODE ANN. Sec. 2.725(a)* (Vernon 1968).

It must be borne in mind, in 1980 or 1981, in Civil Action No. B-80-794-CA, in The United States District Court for the Eastern District of Texas, Beaumont Division, styled *Anthony Pecorino, et ux. v. Fibreboard Corporation, et al.*, by way of pretrial motions and a Pretrial Order, that the Plaintiffs and Defendants had both filed motions to allow the use of depositions and court testimony taken in prior cases involving claims against manufacturers of asbestos-contained products which had caused asbestosis, mesothelioma and cancer.

In Appellant's live pleadings, in the case sub judice, she unequivocally pleads that the mesothelioma was and is solely caused by exposure to asbestos dust and/or fibers. We, as an intermediate court, do not write on a clean slate and we, too, can fervently hope that the Supreme Court of Texas will consider the single cause of action rule or that the Texas Legislature will act appropriately on this rule in its next session.

Under present law, we decide that the cause of action now pleaded by Mrs. Pecorino accrued and arose at sometime prior to, or during, 1980 and is barred for the above reasons.

We have concluded that we not only may, but must, analyze the release in order to determine what Mertice and Anthony Pecorino knew or, in the exercise of ordinary care, should have known. Further, under this unique record, the release is so inextricably and inexorably intertwined, mixed, united, involved and thoroughly commingled with the statute of limitations question that the release—being an integral and necessary part of the statute of limitations question or issue—must be considered by us.

As set out above, the release set forth that Anthony Pecorino sustained both severe and permanent injuries as a result of working with, and being exposed to, various insulating materials and other products which contained asbestos. The insulating materials and other products containing asbestos—the release pointed out—were sold, manufactured or distributed by the various released parties in the 1980 lawsuit, the release having been given after the suit was filed. The sum of money paid was the quid pro quo for the full release in the sum of $125,000 in hand paid to the Plaintiffs and their able attorneys of record. The Plaintiffs, pursuant to the 1980 suit, and their attorneys contracted to fully and finally release, acquit and forever discharge the released parties, as well as all other persons, firms or corporations who might, in any way, be claimed to be legally responsible, either directly or indirectly. This release was to cover any of the occurrences and any of the consequences of the said occurrences in the 1980 litigation in the United States District Court, even though the consequences may not have all been specifically named and recited in the said release. Furthermore, the release released, quitclaimed and discharged all claims, all demands, and all causes of action arising out of, or in anyway connected with, either directly or indirectly, the exposures or occurrences sustained or experienced by Anthony Pecorino, as well as any consequence thereof.

Mertice and Anthony Pecorino, in the settlement of the 1980 lawsuit, joined by their attorneys of record, further contracted with, agreed to, and intended as follows:

"We intend this release to be as broad and comprehensive as possible, so that the Released Parties shall never be liable, directly or indirectly, to us or our beneficiaries, heirs, successors or assigns or any person, firm or corporation claiming by, through, under or on behalf of us or them, for *any* claims, demands, ac-

tions or causes of action of whatsoever nature or character arising out of *any illness* of ANTHONY PECORINO in any way connected with use of or exposure to various insulating materials and products...." (Emphasis supplied)

Of special significance and crucial importance, we deem, is the following paragraph in the release of November, 1981, which was placed above the signature lines, which reads as follows:

> "By our signatures below *we represent that we understand this Final Release and Indemnity constitutes a final and complete Release of all claims regardless of their kind or character including any possible claim which might be discovered in the future....*" (Emphasis added)

A release is a contract between, or among, the parties. Hence, the well-established Texas rules, concerning the interpretation and effect of contract law apply. In a situation where a written release in full uses language and wording which can be given a certain or definite legal meaning or interpretation, then that said written contract of release is not an ambiguous one. *Alba Tool & Supply v. Industrial Contractors*, 585 S.W.2d 662 (Tex.1979).

A genuine, meaningful uncertainty and ambiguity must exist to render a contract ambiguous and, for a contract to be ambiguous, there must exist a genuine and meaningful uncertainty as to which one of two or more meanings or interpretations is proper. *R. & P. Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517 (Tex.1980). This release in full, and contract, has not been attacked as being the result of fraud, accident, mistake or legal infirmity. It has not been set aside or declared null and void or even voidable or unenforceable.

We conclude that the language of the release is clear, unambiguous and unequivocal as to any claims, demands or causes of action of whatever nature or character arising out of any illness of Anthony Pecorino which was, in any way, connected with the use of, or exposure to, the various insulating materials and products, some of which contained asbestos. The release contract constituted a final and complete release of all claims, regardless of their kind or character, which definitely included any possible claim which might be discovered in the future. Hence, we hold that the trial court was correct in granting the summary judgment based on the statutes of limitation and the trial court should have also granted the motion on the release, itself, as well as the assignment.

■ The dissent records that Texas follows the "discovery rule", relying upon *Nelson v. Krusen*, 678 S.W.2d 918 (Tex. 1984). Our dissenting brother pontificates, in part:

> "[T]he open court's provision of our state constitution prevents the cutting off of a cause of action before the *party knows or reasonably should know that he is injured.*" (Emphasis added)

The record before us *conclusively proves that Mr. Pecorino knew that he was injured and brought a lawsuit for damages based on his injury and unequivocally released the damages flowing from his injury* for a sum of money, being $125,-000.00, the sufficiency of which is not attacked. The spurious dissent states that mesothelioma and asbestosis are "two separate and distinct diseases", but the dissent does not state that there were two causes of actions. The "separate and distinct" diseases concept arises from a medical doctor speaking from a medical standpoint. This concept is a medical one—not a legal one.

Further, in a brittlely written and brittlely reasoned passage, our dissenting brother recited that the Appellant's medical expert stated there was only a 9% chance that someone with asbestosis would contract mesothelioma. Then, in a repetitious manner, the dissent states: "[T]here is only a possibility and not a probability that someone with asbestosis will contract mesothelioma," thereby acknowledging, impliedly, in the appeal at bar, that the asbestosis was contracted first (as, indeed, it was) and that the mesothelioma had a causal connection to the asbestosis.

Furthermore, the dissent inflexibly misapplies, or does not understand, the proba-

bility factor as the same relates to the admissibility of the medical expert's testimony, concluding that the medical expert's testimony or evidence must be based on a "greater than a 50% risk of developing cancer after an asbestos exposure." However, it is the substance rather than the form of the expert medical testimony that determines its admissibility before the fact finder. *Otis Elevator Company v. Wood*, 436 S.W.2d 324 (Tex.1968). The admissibility of the evidence of medical expert witnesses does not turn on semantics or on percentages or by the use of a particular phrase. *Otis Elevator Company, supra.* The greater than 50% or the 51% rule, concerning expert medical testimony, is not unquestioned dogma; nor is the 51% rule, nor the slavish words that express it, talismanic.

It is interesting and baffling that the dissent is disgruntled and displeased with the opinion in *Graffagnino v. Fibreboard*, 776 F.2d 1307 (5th Cir.1985), wailing that our court "is not bound to accept a federal court's erroneous interpretation of Texas law." We think the Fifth Circuit's interpretation of Texas law was not erroneous. While our dissenting brother disapproves of our citing *Graffagnino, supra,* he would strangely favor and passionately embrace the decisions of *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 ([United States Court of Appeals, District of Columbia Circuit] 1982); *Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 399 N.W.2d 1 ([Supreme Court of Michigan] 1987); *Sheppard v. A.C. & S. Co.*, 498 A.2d 1126 ([Superior Court of Delaware], 1985) *adopted in full Keene Corp. v. Sheppard*, 503 A.2d 192 ([Supreme Court of Delaware], 1986); *Devlin v. Johns–Manville Corp.*, 202 N.J. Super. 556, 495 A.2d 495 ([Superior Court of New Jersey] 1985); *McFearson v. Johns–Manville Sales Corp.*, 525 F.Supp. 671 ([United States District Court, District of Columbia], 1981); *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517 ([District Court of Appeals of Florida], 1985); *In Re Moorenovich*, 634 F.Supp. 634 ([United States District Court D.Maine], 1986); *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 492 A.2d 1286 ([Court of Appeals of Maryland], 1985); and, *Herber v. Johns–Manville Corp.*, 785 F.2d 79 ([United States Court of Appeals Third Circuit], 1986). No one of these cases applies the Texas law disallowing the splitting of a cause of action.

The Appellant's medical expert was one Dr. Gary K. Friedman, who specializes in the field of pulmonary disease and more particularly, in the specialized field of occupational lung disease. Dr. Friedman was board certified in his specialty and had developed one of the largest, if not the largest, pulmonary practice in Texas. He was also declared board eligible by the American Board of Public Health in occupational medicine. Dr. Friedman testified that the only known scientifically acceptable cause of either pleural or peritoneal mesothelioma was asbestos exposure. This scientific fact was shown by epidemiologic studies. The doctor testified that exposure to asbestos causes many different diseases, two of which are asbestosis and mesothelioma.

In the procedure for diagnosing mesothelioma, a history is taken and if there is a history of asbestos exposure then such asbestos exposure is considered significant. The doctor testified that asbestos is the cause of a number of medical diseases, including asbestosis in two forms, parenchymal and pleural, cancer of the larynx, of the lungs, and of various portions of the gastrointestinal tract, of the kidney, and asbestos also causes cancer of the linings around the lung and around the gastrointestinal tract, these being known as mesothelioma of the pleura and of the peritoneum. Asbestos also causes a non-malignant disease in the form of an asbestosis wart upon the skin. It is correct that the doctor identified the diseases of asbestosis and mesothelioma as separate and distinct medical diseases. Dr. Friedman testified that since Mr. Pecorino had been an insulator during his working life and had been exposed to asbestos for quite a number of years and contracted mesothelioma that in his opinion the asbestos exposure caused the mesothelioma. This same doctor had diagnosed Mr. Pecorino as having contracted asbestosis back in either 1980 or 1981. The doctor did testify that the disease of asbestosis and the disease of mesothelioma are both caused by the same agent, that agent being asbestos. The dissent necessitates this question. Query? Would there be a different beginning date for the statute of limitation as well as a separate and additional element of damages for any or all of the asbestos caused diseases including asbestosis, cancer of the larynx, cancer of the lung, cancer of the gastrointestinal tract, cancer of the kidney; cancer of the

linings around the lung and the gastrointestinal tract, these being known also as mesothelioma of the pleura and of the peritoneum; and asbestosis warts on the skin. This is a necessary inquiry since the doctor testified that these disorders are separate and distinct in medical literature.

### The Texas Cases

Although *Gideon, supra,* and *Graffagnino, supra,* were decided in the United States Court of Appeals, we determine that they properly and correctly interpreted and applied Texas law. *See Houston & T.C.R. Co. v. McCarty,* 94 Tex. 298, 60 S.W. 429 (1901); *Inter–Ocean Casualty Co. v. Johnston,* 123 Tex. 592, 72 S.W.2d 583 (Tex. Comm'n App.1934, opinion adopted). *See and compare First Nat. Bank of Grapevine v. Nu–Way Transports, Inc.,* 585 S.W.2d 813 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.).

An integral motion for summary judgment was presented. The district judge granted only a fragment of it. The granting of the motion was done in a piecemeal manner. This decision had the effect of an adjudication of a fragmentary issue of fact and law which was not dispositive of any claim or contention. This was improper. 4 R. McDonald, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS sec. 17.26.3 (rev. 1984).

It is now common knowledge, based upon common sense, that large numbers of asbestosis cases are tried in the United States district courts simultaneously. Hence, if full and final releases, such as the one in this case, were not given some meaningful effect, the amounts of the settlements would inevitably be drastically reduced. 1 R. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL sec. 151, et seq. (Texas Practice 3rd Ed.1980).

For the reasons above stated, we affirm the trial court's judgment.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority, at the onset, states this is a summary judgment appeal, but does not, in my opinion, apply summary judgment analysis. For example, the summary judgment was not granted on the basis of either the release or the assignment, yet the majority states the trial court should have granted it on those bases. This final pronouncement simply highlights the majority's flawed analysis.

The sole point of error urged by appellant is the trial court erred in granting the summary judgment based upon the statute of limitation because Texas would recognize that there exist separate and distinct causes of action for the separate and distinct diseases of mesothelioma and asbestosis. There is no doubt that *Graffagnino v. Fibreboard Corp.,* 776 F.2d 1307 (5th Cir. 1985), held there could be but one cause of action based upon the exposure whether or not all the injuries have become manifest at the time the cause of action arose. This court, however, is not bound to accept a federal court's erroneous interpretation of Texas law. *See Amoco Chem. Corp. v. Malone Serv. Co.,* 712 S.W.2d 611 (Tex. App.—Houston [1st Dist.] 1986, no writ). *Graffagnino's* single-cause-of-action holding *was* criticized by *Hagerty v. L & L Marine Serv.,* 788 F.2d 315 (5th Cir.), *modified,* 797 F.2d 256 (5th Cir.1986), and, contrary to the majority's inference, the court's modification of its original opinion *did not* soften the criticism. *Hagerty* pointed out the flaw in applying the single-cause-of-action rule to an injury which had not manifested itself. Once there has been some toxic exposure, a claimant must file suit within the statute of limitations, yet he can only recover for those injuries which, in reasonable medical probability, resulted from the exposure.

There can be no doubt that Texas follows the well reasoned "discovery rule." Further, the open courts provision of our state constitution prevents the cutting off of a cause of action before the party knows or reasonably should know that he is injured. *Nelson v. Krusen,* 678 S.W.2d 918 (Tex. 1984). Appellant produced competent summary judgment evidence that mesothelioma and asbestosis are two separate and distinct diseases. Appellant's expert stated there was only a 9% chance that someone with asbestosis would contract mesothelioma. Therefore, there is only a possibility and not a probability that someone with asbestosis will contract mesothelioma. In a summary judgment proceeding, evidence favorable to the non-movant must be taken as true. *Waggoners' Home Lumber Co. v. Bendix Forest Prod. Corp.,* 639 S.W.2d 327 (Tex.App.—Texarkana 1982, no writ). This summary judgment medical evidence is what distinguishes this case factually from

*Graffagnino* which based its holding on *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985). In *Gideon*, the *only* medical evidence was that there was greater than a 50% risk of developing cancer after an asbestos exposure.

The majority cites three Texas cases, none on point. *Houston & T.C.R. Co. v. McCarty*, 94 Tex. 298, 60 S.W. 429 (1901) and *Inter–Ocean Cas. Co. v. Johnston*, 123 Tex. 592, 72 S.W.2d 583 (1934) are both cases involving releases, while *First Nat'l Bank of Grapevine v. Nu–Way Transp., Inc.*, 585 S.W.2d 813 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.), is a conversion case applying a two-year statute of limitation.

Many sister jurisdictions have recognized that a separate and distinct cause of action exists for separate and distinct diseases such as asbestosis and mesothelioma. *See Herber v. Johns–Manville Sales Corp.*, 785 F.2d 79 (3rd Cir.1986) (applying New Jersey law); *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C.Cir.1982); *In re Moorenovich*, 634 F.Supp. 634 (D.Me.1986); *Fearson v. Johns–Manville Sales Corp.*, 525 F.Supp. 671 (D.D.C.1981); *Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 399 N.W.2d 1 (1986); *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 492 A.2d 1286 (1985); *Eagle–Picher Indus. v. Cox*, 481 So.2d 517 (Fla.Dist.Ct.App.1985), *rev. denied*, 492 So.2d 1331 (Fla.1986); *Sheppard v. A.C. & S. Co.*, 498 A.2d 1126 (Del. Super.Ct.1985), *aff'd*, 503 A.2d 192 (Del. 1986); *Devlin v. Johns–Manville Corp.*, 202 N.J.Super. 556, 495 A.2d 495 (1985).

Unlike the majority, I do not believe that *Gideon* and *Graffagnino* correctly interpreted and applied Texas law, or are they controlling. Our supreme court has properly held that the legislature could not, under our state constitution, enact a statute that deprives a litigant of a cause of action prior to a reasonable opportunity to discover the wrong. *Nelson*, 678 S.W.2d at 923; *Neagle v. Nelson*, 685 S.W.2d 11 (Tex. 1985). Neither the United States Court of Appeals for the Fifth Circuit nor this court, for that matter, can do what the Texas legislature could not. I, therefore, respectfully dissent.

DIES, Chief Justice, concurring.

This is a concurrence to the original opinion delivered December 29, 1988.

The real problem here, as seen by this writer anyway, is that the instrument which settled the asbestos claim does not limit itself to that claim. Whether it be called a compromise and settlement, or a release, it clearly covers all future effects from the same exposure. No release of a claim for personal injuries can be avoided on the ground of mistake because the injuries prove to be more serious than believed by the releasor at the time of executing the release. 50 TEX.JUR.2d *Release* sec. 16 (1969), and authorities cited. "Nor is this rule altered by the fact that the mistake was a mutual one, *since to hold otherwise would militate against voluntary settlements*. If, therefore, the minds of the parties meet on the understanding that the payment and acceptance of the consideration were in full settlement of the releasee's liability, and if there is no fraud or unfair conduct on either side, the release is valid, even though the injuries be more or less than appearances indicated. Each party takes the chance of future developments that may change conditions." *Id.* (Emphasis added). For the reason stated, I concur in the disposition of the case.